Charles GLUECK, Plaintiff,

v.

JONATHAN LOGAN, INC., Defendant.

No. 80 Civ. 7000.

United States District Court,
S. D. New York.

April 14, 1981.

Phillips, Nizer, Benjamin, Krim & Ballon, New York City, for plaintiff; Stanley D. Halperin, Neil A. Pollio, New York City, of counsel.

Kaye, Scholer, Fierman, Hays & Handler, New York City, for defendant; Frederic W. Yerman, Andrew P. Weiss, New York City, of counsel.

## OPINION AND ORDER

CONNER, District Judge:

Plaintiff in this action alleges that he was wrongfully terminated from his executive position with defendant in contravention of his employment contract. Presently before the Court is defendant's motion to disqualify the law firm of Phillips, Nizer, Benjamin, Krim & Ballon ("Phillips Nizer") from representing plaintiff in this action. For the reasons which follow, the motion is granted.

## BACKGROUND

Since 1936, Phillips Nizer (or its partners) has represented, and continues to represent, the Apparel Manufacturers Association, Inc. ("AMA") and, prior to 1976, AMA's predecessor, Popular Priced Dress Manufacturers Group, Inc. ("PPDM"). AMA is a New York not-for-profit corporate trade association having approximately 100 members. AMA members are corporations engaged in the manufacture and distribution of women's clothing. AMA's sole function is to negotiate and execute multi-employer collective bargaining agreements on behalf of its members with employees represented by the International Ladies Garment Workers' Union ("ILGWU") and ILGWU's local bargaining agent, the Dressmakers' Joint Council ("DJC").

Defendant is an integrated producer of apparel, principally for women. Since 1962, defendant has been a member of AMA (or of PPDM prior to 1976).[1] Defendant is one of the two or three largest members of AMA. Manny Eagle ("Eagle"), the President of the R & K Originals division of defendant, is also Executive Vice-President of AMA and one of six persons on AMA's committee responsible for collective bargaining with ILGWU and DJC.

Phillips Nizer's representation of AMA includes active involvement in collective bargaining negotiations and significant contact with the AMA negotiating committee regarding such negotiations and agreements. While Phillips Nizer has occasionally been independently retained by individual AMA members, Phillips Nizer has not represented defendant apart from its representation of AMA.

---

1. Plaintiff contends that R & K Originals ("R & K"), not defendant, is listed as a member of AMA. R & K is simply a division of defendant; R & K is not incorporated and is not a legal entity separate from defendant. Employees of R & K are plainly employees of defendant, and AMA manifestly acts on behalf of defendant to the extent it acts on behalf of R & K. It is defendant that is bound by collective bargain-ing agreements negotiated by AMA with regard to R & K division employees. Moreover, membership dues in AMA are paid by Jonathan Logan Financial, the financial division of defendant. Under these circumstances, plaintiff's contention is rejected on both technical and practical grounds. Defendant is a member of AMA through its R & K division.

Plaintiff was employed by defendant in the executive position of "Fashion Director" at an annual salary of $165,000. That position is not covered by collective bargaining agreements negotiated by AMA on behalf of defendant.

*DISCUSSION*

Defendant contends that Phillip Nizer's simultaneous representation of plaintiff in this action, and of defendant (through AMA) in collective bargaining negotiations, violates Canons 4, 5 and 9 of the Code of Professional Responsibility ("Code"), as promulgated by the American Bar Association and adopted by the New York Bar Association.[2] However, defendant places greatest emphasis upon Canon 5, which provides:

"A lawyer should exercise independent professional judgment on behalf of a client."

In *Cinema 5, Ltd. v. Cinerama, Inc.*, 528 F.2d 1384 (2d Cir. 1976), the Second Circuit considered the application of Canon 5 to an attorney seeking to represent a plaintiff prosecuting a suit against another current client of the attorney. The attorney argued that disqualification should not be required absent a "substantial relationship" between the subject matter of the action at bar and that of the attorney's representation of the defendant. The court rejected that contention as relying upon an inappropriate measure of compliance with Canon 5.

"The 'substantial relationship' test is indeed the one that we have customarily applied in determining whether a lawyer may accept employment against a former client. *International Electronics Corp. v. Flanzer*, 527 F.2d 1288, 1291 (2d Cir. 1975); *Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp.*, 518 F.2d 751 (2d Cir. 1975); *Emle Industries, Inc. v. Patentex, Inc.*, 478 F.2d 562 (2d Cir. 1973). However, in this case, suit is not against a former client, but an existing one.

\*　　\*　　\*　　\*　　\*　　\*

"The propriety of this conduct must be measured not so much against the similarities in litigation, as against the duty of undivided loyalty which an attorney owes to each of his clients.

\*　　\*　　\*　　\*　　\*　　\*

"Ethical Considerations 5–1 and 5–14 of the American Bar Association's Code of Professional Responsibility provide that the professional judgment of a lawyer must be exercised solely for the benefit of his client, free of compromising influences and loyalties, and this precludes his acceptance of employment that will adversely affect his judgment or dilute his loyalty.

\*　　\*　　\*　　\*　　\*　　\*

"Under the Code, the lawyer who would sue his own client, asserting in justification the lack of 'substantial relationship' between the litigation and the work he has undertaken to perform for that client, is leaning on a slender reed indeed. Putting it as mildly as we can, we think it would be questionable conduct for an attorney to participate in any lawsuit against his own client without the knowledge and consent of all concerned. This appears to be the opinion of the foremost writers in the field, see Wise, *supra*, at 272; Drinker, *Legal Ethics* 112, 116, and it is the holding of the New York courts. In *Matter of Kelly*, 23 N.Y.2d 368, 376, 296 N.Y.S.2d 937, 244 N.E.2d 456 (1968), New York's highest court said that 'with rare and conditional exceptions, the lawyer may not place himself in a position where a conflicting interest may, even inadvertently, affect, or give the appearance of affecting, the obligations of the professional relationship.' Nor is New York alone in this view. In *Grievance Committee v. Rottner, supra*, 152 Conn. [59] at 65, 203 A.2d 82, Connecticut's highest court held that the maintenance of public confidence in the bar requires an attorney to decline employment adverse to his client, even

---

2. Canon 4 provides:

"A lawyer should preserve the confidences and secrets of a client."

Canon 9 provides:

"A lawyer should avoid even the appearance of professional impropriety."

though the nature of such employment is wholly unrelated to that of his existing representation.

"Whether such adverse representation, without more, requires disqualification in every case, is a matter we need not now decide. We do hold, however, that the 'substantial relationship' test does not set a sufficiently high standard by which the necessity for disqualification should be determined. That test may properly be applied only where the representation of a former client has been terminated and the parameters of such relationship have been fixed. Where the relationship is a continuing one, adverse representation is prima facie improper, *Matter of Kelly, supra*, 23 N.Y.2d at 376 [296 N.Y.S.2d 937, 244 N.E.2d 456], and the attorney must be prepared to show, at the very least, that there will be no actual or *apparent* conflict in loyalties or diminution in the vigor of his representation."
*Id.* at 1386–87.

Applying the principles set forth in *Cinema 5* to the instant circumstances, the initial inquiry must be whether Phillips Nizer's representation of AMA also constitutes representation of defendant. Defendant relies upon case law establishing that each individual member of an unincorporated association is a client of the association's lawyer. *Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp.*, 294 F.Supp. 1148, 1150 (E.D.Pa.1969); *United States v. American Radiator & Standard Sanitary Corp.*, 278 F.Supp. 608, 614 (W.D.Pa.1967); *Schwartz v. Broadcast Music, Inc.*, 16 F.R.D. 31, 32 (S.D.N.Y.1954); see also *Halverson v. Convenient Food Mart, Inc.*, 458 F.2d 927, 930 (7th Cir. 1972). Plaintiff does not dispute these rulings, but argues that a different result is mandated where, as here, the association is incorporated and is thus a separate legal entity from its members.

Plaintiff has called two decisions to the Court's attention as bearing on this purported distinction. In *Westinghouse Electric Corp. v. Kerr-McGee Corp.*, 580 F.2d 1311 (7th Cir. 1978), the Seventh Circuit addressed the question of disqualification of a law firm from representing a plaintiff in a suit against defendants who were members of a not-for-profit corporate trade association also represented by the law firm. After acknowledging the case law regarding an association's attorney's representation of the association's members, the court noted that it was faced not with an unincorporated association, but rather with a nation-wide trade association doing business as a non-profit corporation. However, the court refused to "make any generalized pronouncements of whether an attorney for such an organization represents every member," *id.* at 1319, instead ruling "on a much more narrow ground," *id.*, i. e., that disqualification was mandated because, on the particular facts of that case, it concluded that the law firm had assumed independent fiduciary responsibilities running to the defendants, and in that capacity had acquired confidential information unequivocally bearing on the subject of the pending action.

In *Matter of Allied Artists Pictures Corp.*, 5 Bankr.Ct.Dec. 636 (S.D.N.Y.1979), the debtor-in-possession in a Chapter XI proceeding, Allied Artists Pictures Corporation ("Pictures"), sought to disqualify Phillips Nizer from serving as counsel to the creditors committee, in part because of Phillips Nizer's representation of Motion Pictures Association of America ("MPAA"), an apparently incorporated trade association which had included Pictures as a member prior to Pictures' reorganization petition. After discussing and distinguishing *Westinghouse*, the bankruptcy court denied the motion to disqualify. In so ruling, the court pointed to the following factors as determinative:

(1) that because a post-petition debtor-in-possession does not operate in a purely adversarial posture vis-á-vis its creditors, it is not necessary "to apply judicially developed rules of disqualification to the same extent as in traditional litigated matters," *id.* at 638;

(2) Pictures' largest creditor was United Artists Corporation, also a MPAA member

and Phillips Nizer's primary client in the motion picture industry; and

(3) there was no evidence that Phillips Nizer's representation of MPAA had resulted in the law firm's becoming privy to any confidential information regarding Pictures having a "substantial relationship" to the reorganization proceeding.

[redacted] Upon consideration of these authorities, the Court concludes that Phillips Nizer's representation of AMA does constitute representation of defendant for purposes of triggering inquiry into the potential conflict involved in Phillips Nizer's role as plaintiff's counsel in this action. Neither the circuit court in *Westinghouse* nor the bankruptcy court in *Allied Artists* ruled on this question, each court instead resolving the disqualification motion on the particular factual and procedural circumstances confronting it. While this court does not find it necessary or prudent to pass generally on the full significance of the corporate form of the trade association, I am not persuaded that that factor alone precludes a disqualification motion in a suit against a member of a corporate association. Indeed, if an association's attorney would otherwise be disqualified from prosecuting an action against an association member, it would be a sophistic triumph of form over substance if that bar could be avoided *solely* by the incorporation of the association. More to the point in gauging whether a corporate association's attorney faces a potential conflict in proceeding against an association member is the degree of functional equivalency between the association and its members, especially in the area for which the attorney's services have been retained. Here, where AMA has no other function except to negotiate and execute collective bargaining agreements on behalf of its members, and where Phillips Nizer's representation consists of legal services in support of that joint effort, it is plain that as a practical matter Phillips Nizer has represented the interests of AMA members. Accordingly, the Court concludes that defendant is a *de facto* existing client of Phillips Nizer, at least for the limited purpose of evaluating any potential conflict in this suit.

This conclusion triggers the second stage of the inquiry, *i. e.* whether Phillips Nizer has demonstrated, "at the very least, that there will be no actual or *apparent* conflict in loyalties or diminution in the vigor of [its] representation," *Cinema 5, supra* at 1387. In support of the motion defendants have submitted an affidavit of Eagle, who attests that he has "frequently imparted sensitive information regarding bargaining positions and strategy relating to defendant's objectives in collective bargaining" to Phillips Nizer and that Phillips Nizer's representation of plaintiff in this action would substantially impede the trust, confidence and free communication of information necessary for Phillips Nizer's effective representation of defendant's interests in negotiations with ILGWU and DJC. In opposition to the motion, the record contains an affidavit of Stanley D. Halperin, a partner in Phillips Nizer, who attests that Phillips Nizer has received no confidential information from defendant; that AMA members do not disclose confidential information to Phillips Nizer because such information would be available to their competitors, other AMA members; and that discussions with Eagle have been in Eagle's capacity as an AMA executive.

[redacted] Plainly there is not the obvious and direct conflict of interest that would be present if plaintiff were an employee covered by the collective bargaining agreements with the ILGWU. Nevertheless, the Court is not persuaded that the differences between the subject of this suit and the nature of the services rendered by Phillips Nizer on behalf of AMA and its members is sufficient to satisfy the strict test for permitting prosecution of a suit against a current client set forth in *Cinema 5, supra.* While AMA members are competitors, for purposes of AMA transactions they are essentially united in interest in an adversarial relation to their ILGWU employees. It is not inconceivable that AMA meetings might produce disclosures intended to be confidential as against employees, even ex-

ecutive employees. For example, an issue in this litigation may well be whether defendant had cause to terminate plaintiff's employment, a subject (termination for cause) which may arise in collective bargaining discussions. Furthermore, it is not impossible that in the course of any strategy discussions concerning collective bargaining positions Phillips Nizer might become privy to information as to defendant's policies or past practices bearing on the subject of plaintiff's termination.

■ These hypotheticals are admittedly speculative, but they suffice to illustrate the inappropriateness of Phillips Nizer's acting as counsel to plaintiff in this action. The issue is not solely whether Phillips Nizer has acquired confidential information concerning defendant, but additionally whether defendant's representatives (even if simultaneously acting as AMA officials) must be on guard in their discussions with Phillips Nizer to avoid disclosures having any possible consequence in this action. Such is not the environment contemplated for an attorney-client relationship by the drafters of Canon 5.

■ Furthermore, the Bar has an independent interest in avoiding even the appearance of impropriety, and that interest mandates a clear margin of protection against potentially conflicting arrangements. As the court in *Cinema 5* noted,

"... we are confident that he would make every effort to disassociate himself from both lawsuits and would not divulge any information that came to him concerning either. However, we cannot impart this same confidence to the public by court order."

*Id.* at 1387 n.1. Accordingly, any doubt in the disqualification situation is to be resolved in favor of disqualification. *Hull v. Celanese Corp.*, 513 F.2d 568, 571 (2d Cir. 1975).

This result is in no way inconsistent with the decision in *Allied Artists, supra*, upon which plaintiff relies. Allied Artists differs from the present case in at least three significant respects:

(1) because of the posture of the parties in the reorganization proceeding, the traditional rules regarding disqualification were not applied to their full extent in *Allied Artists*;

(2) *Allied Artists* was decided as a case involving representation adverse to a *former* client under the "substantial relationship" test, while a much stricter standard is required here where the moving party is an existing client, see *Cinema 5, supra*; and

(3) in finding no basis for concluding that confidential information had been disclosed by Pictures in conjunction with its membership in MPAA, the court in *Allied Artists* relied upon the facts that MPAA members were competitors and the primary creditor of Pictures was itself an MPAA member. Here, however, plaintiff is an employee of defendant, and there is little force to the argument that disclosures in AMA meetings cannot be intended to be confidential as to employees such as plaintiff simply because AMA members are competitors.

For these reasons, defendant's motion to disqualify Phillips Nizer from acting as counsel for plaintiff in this action is granted.

SO ORDERED.