**Charles GLUECK, Appellant,**

v.

**JONATHAN LOGAN, INC., Appellee.**

**No. 1508, Docket 81–7296.**

United States Court of Appeals,
Second Circuit.

Argued June 1, 1981.

Decided July 6, 1981.

Neil A. Pollio, New York City (Alan Mansfield, Phillips, Nizer, Benjamin, Krim & Ballon, New York City, on the brief), for plaintiff-appellant.

Fredric W. Yerman, New York City (Andrew P. Weiss, Kaye, Scholer, Fierman, Hays & Handler, New York City, on the brief), for defendant-appellee.

Before KAUFMAN and NEWMAN, Circuit Judges, and GAGLIARDI,* District Judge.

NEWMAN, Circuit Judge:

The issue on this appeal is whether in the circumstances of this case a law firm that represents an incorporated trade association may represent an individual client in a suit against a corporation one division of which is a member of the association. The District Court for the Southern District of New York (William C. Conner, Judge) ruled that the firm must be disqualified. We

---

* The Honorable Lee P. Gagliardi of the United States District Court for the Southern District of New York, sitting by designation.

conclude that Judge Conner applied the correct standards of law and reached a result well within his discretion, and we therefore affirm.

■ The appellant, Charles Glueck, formerly employed as an executive of appellee Jonathan Logan, Inc. ("Logan"), brought this suit against Logan, alleging that he was discharged in breach of his employment contract. Logan promptly moved to disqualify Glueck's law firm, Phillips, Nizer, Benjamin, Krim & Ballon ("Phillips Nizer"). The motion was based on the following undisputed facts. Phillips Nizer represents the Apparel Manufacturers Association, Inc. ("the Association"), a not-for-profit incorporated trade association of dress manufacturers with more than 100 members.[1] The sole function of the Association is to negotiate multi-employer collective bargaining agreements on behalf of its members with employees represented by the International Ladies Garment Workers' Union. One of the Association's members is R & K Originals, a division of Logan. The division's president, Manny Eagle, is executive vice-president of the Association and a member of the Association's negotiating committee. Eagle has had occasion to meet with lawyers from Phillips Nizer and discuss labor matters with them. On these facts, Judge Conner granted appellee's motion to disqualify Phillips Nizer from representing Glueck in his suit against Logan. *Glueck v. Jonathan Logan, Inc.*, 512 F.Supp. 223 (S.D.N.Y.1981). From that ruling, Glueck appeals.[2]

■ Recognizing the serious impact of attorney disqualification on the client's right to select counsel of his choice, we have indicated that such relief should ordinarily be granted only when a violation of the Canons of the Code of Professional Responsibility poses a significant risk of trial taint. *Armstrong v. McAlpin*, 625 F.2d 433, 444–46 (2d Cir. 1980) *(en banc), vacated on other grounds and remanded*, 449 U.S. 1106, 101 S.Ct. 911, 66 L.Ed.2d 835 (1981); *Board of Education v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979). That risk is encountered when an attorney represents one client in a suit against another client, in violation of Canon 5, *e. g., Cinema 5, Ltd. v. Cinerama, Inc.*, 528 F.2d 1384 (2d Cir. 1976), or might benefit a client in a lawsuit by using confidential information about an adverse party obtained through prior representation of that party, in violation of Canon 4, *e. g., Emle Industries, Inc. v. Patentex, Inc.*, 478 F.2d 562 (2d Cir. 1973). Mindful of our standards, the parties have joined issue on whether Logan is a client of Phillips Nizer by virtue of the firm's representation of the Association. Glueck contends that members of an incorporated trade association are not clients of the association's lawyer and emphasizes that the retainer agreement between Phillips Nizer and the Association explicitly negates the firm's representation of the Association's members. Logan responds that the members of an incorporated association are the clients of the association's lawyer and argues that Phillips Nizer's retainer agreement only assures it the right to charge separate fees for legal work done specifically for an Association member.

■ We share Judge Conner's view that the issue is not whether Phillips Nizer's relationship to Logan is in all respects that of attorney and client,[3] but whether there

---

1. The representation has continued since 1936 when partners of Phillips Nizer represented the Association's predecessor, Popular Priced Dress Manufacturers Group, Inc.

2. We continue to believe that orders *granting* disqualification remain appealable, *Armstrong v. McAlpin*, 625 F.2d 433, 440–41 (2d Cir. 1980) *(en banc), vacated on other grounds and remanded*, 449 U.S. 1106, 101 S.Ct. 911, 66 L.Ed.2d 835 (1981), despite the Supreme Court's explicit pretermission of decision on that issue, *Firestone Tire & Rubber Co. v. Ris-*

*jord*, 449 U.S. 368, 372, 101 S.Ct. 669, 672 n.8, 66 L.Ed.2d 571 (1981).

3. For example, we are not assessing whether statements made by an association member to an association's lawyer are protected by the attorney-client privilege. *See Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp.*, 294 F.Supp. 1148, 1149–50 (E.D.Pa.1969); *United States v. American Radiator & Standard Sanitary Corp.*, 278

exist sufficient aspects of an attorney-client relationship "for purposes of triggering inquiry into the potential conflict involved in Phillips Nizer's role as plaintiff's counsel in this action."[4] 512 F.Supp. at 227. *See Westinghouse Electric Corp. v. Kerr-McGee Corp.*, 580 F.2d 1311, 1318–20 (7th Cir.), *cert. denied*, 439 U.S. 955, 99 S.Ct. 353, 58 L.Ed.2d 346 (1978). Having concluded that such inquiry should be made, Judge Conner then applied the strict standards that ordinarily prohibit representation of adverse interests, *Cinema 5, Ltd. v. Cinerama, Inc., supra*, and determined that, in view of the relationship between the subject of Glueck's lawsuit and the nature of the services rendered by Phillips Nizer to the Association and its members, Phillips Nizer had not demonstrated " 'that there will be no actual or *apparent* conflict in loyalties or diminution in the vigor of [its] representation.' " 512 F.Supp. at 226, *quoting Cinema 5, supra*, 528 F.2d at 1387 (emphasis in original).

We reach the same conclusion, but analyze the issue in a slightly different way. We do not believe the strict standards of *Cinema 5* are inevitably invoked whenever a law firm brings suit against a member of an association that the firm represents. If they were, many lawyers would be needlessly disqualified because the standards of Canon 5 impose upon counsel who seeks to avoid disqualification a burden so heavy that it will rarely be met. That burden is properly imposed when a lawyer undertakes to represent two adverse parties, both of which are his clients in the traditional sense. But when an adverse party is only a vicarious client by virtue of membership in an association, the risks against which Canon 5 guards will not inevitably arise. A law firm that represents the American Bar Association need not decline to represent a client injured by an automobile driven by a member of the ABA. *See Board of Education v. Nyquist, supra.* Moreover, if Canon 5 were applicable to all suits against association members, there would be a temptation to water down the strict standards of Canon 5 and find them met more easily than in cases where the adverse parties are really clients of the same lawyer. In this case, Judge Conner, after finding Canon 5 applicable, applied what amounted to a "substantial relationship" test,[5] and concluded that the subject of Glueck's lawsuit was substantially related to Phillips Nizer's representation of the Association. However, *Cinema 5* explicitly states that "the 'substantial relationship' test does not set a sufficiently high standard by which the necessity for disqualification [under Canon 5] should be determined." 528 F.2d at 1387. We think the standards of Canon 5 should be left as strict as *Cinema 5* announced them. We also believe those standards should apply to suits against association members only when the risks against which Canon 5 protects are likely to arise.

This approach leads us to use the "substantial relationship" test in determin-

F.Supp. 608, 614 (W.D.Pa.1967); *Schwartz v. Broadcast Music, Inc.*, 16 F.R.D. 31, 32 (S.D.N.Y.1954).

4. We have previously held the standards of Canon 5 to be applicable even though the interests adverse to those of a law firm's client are not those of another client in the traditional sense. *Fund of Funds, Ltd. v. Arthur Andersen & Co.*, 567 F.2d 225, 234 (2d Cir. 1977) (client secures disqualification of law firm, which does not represent client, because of firm's involvement with another firm disqualified for representing interests adverse to the client). *See State Farm Mutual Automobile Insurance Co. v. Walker*, 382 F.2d 548 (7th Cir. 1967) (law firm obtaining admission from insured in the course of representing insurer against third-party claim should withdraw from further representation in lawsuit between insurer and in-

sured), *cert. denied*, 389 U.S. 1045, 88 S.Ct. 789, 19 L.Ed.2d 837 (1968); *see generally Westinghouse Electric Corp. v. Kerr-McGee Corp.*, 580 F.2d 1311, 1318–20 (7th Cir.) (discussing ethical obligations of a law firm in the absence of "express attorney-client relationship"), *cert. denied*, 439 U.S. 955, 99 S.Ct. 353, 58 L.Ed.2d 346 (1978); *Developments in the Law—Conflicts of Interest in the Legal Profession*, 94 Harv.L.Rev. 1244, 1293 n.47, 1321–23 (1981).

5. The "substantial relationship" test was formulated in *T.C. Theatre Corp. v. Warner Bros. Pictures, Inc.*, 113 F.Supp. 265 (S.D.N.Y.1953), to determine whether a lawyer's suit against a former client would risk violation of what is now Canon 4's protection of a client's confidences.

ing when Canon 5 should be applied to suits brought by an association's law firm against an association member. Disqualification will ordinarily be required whenever the subject matter of a suit is sufficiently related to the scope of the matters on which a firm represents an association as to create a realistic risk either that the plaintiff will not be represented with vigor or that unfair advantage will be taken of the defendant. Moreover, although our concern is with the risk of tainting a trial, once that risk appears, it is appropriate to assess the risk that prosecution of a plaintiff's lawsuit by an association's law firm will inhibit the free flow of information from the defendant to the firm that is necessary for the firm's proper representation of the association.

■ Though structured in a slightly different framework,[6] Judge Conner's findings fully justify disqualification under the approach we have outlined. Judge Conner relied upon the risk that the issue of whether Logan had cause to terminate Glueck might well arise in the course of collective bargaining discussions conducted by Phillips Nizer for the Association. He also noted the risk that in preparing for collective bargaining sessions, the law firm might learn of Logan's policies or past practices bearing on the subject of Glueck's termination. These risks demonstrate the requisite relationship between Glueck's lawsuit and the subject matter of Phillips Nizer's representation of the Association. Because of that relationship, the strict standards of *Cinema 5* apply,[7] and we agree with Judge

Conner that appellant has not sustained the heavy burden of demonstrating that, under those standards, disqualification can be avoided. The entry of an order of disqualification was well within the proper exercise of discretion by the District Court.[8] *Cheng v. GAF Corp.*, 631 F.2d 1052 (2d Cir. 1980), *vacated on other grounds and remanded,* —— U.S. ——, 101 S.Ct. 1338, 67 L.Ed.2d 327 (1981); *Hull v. Celanese Corp.*, 513 F.2d 568 (2d Cir. 1975). The order is affirmed.

---

**6.** Judge Conner, in effect, used the "substantial relationship" test to determine whether Phillips Nizer had met its burden under Canon 5; we use the test to determine whether Canon 5 is applicable.

**7.** We reject the appellant's contention that the result reached by Judge Conner is foreclosed by *Board of Education v. Nyquist, supra.* That decision concerned a lawyer who represented male teachers in litigation adverse to the interests of female teachers, under circumstances where the lawyer was supplied to the male teachers pursuant to a legal service program supported in part by the union dues of both the male and female teachers. A disqualification order was reversed for lack of any risk that the lawyer's loyalty to his male clients would be diminished or that he might gain unfair advan-

tage through access to any privileged information from the female teachers. 590 F.2d at 1247.

**8.** We reject, as did Judge Conner, the appellant's contention that disqualification should not occur because Logan's division, R & K Originals, is a member of the Association, rather than Logan itself. The risks identified by Judge Conner are sufficient to warrant disqualification even though only Logan's division is a member of the Association. Nor do we accept the contention that it will be unduly burdensome for law firms that represent trade associations to inform themselves of the corporate identity of those members of an association that are constituent parts of a non-member corporation.