**STRATAGEM DEVELOPMENT CORP., Plaintiff,**

v.

**HERON INTERNATIONAL N.V. and Heron Properties, Inc., Defendants.**

**No. 90 Civ. 6328 (SWK).**

United States District Court,
S.D. New York.

Jan. 31, 1991.

Kenneth J. Kelly, Epstein, Becker & Green, New York City, for plaintiff.

Robert Ward, Shea & Gould, New York City, for defendants.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

Defendants in this case, involving claims of breach of a real estate joint venture

agreement, have moved for disqualification of Epstein, Becker & Green ("Epstein Becker" or the "Firm") as plaintiff's counsel, because of alleged dual representation.[1] Epstein Becker has taken certain steps to withdraw as counsel in other legal matters in which it represented a subsidiary of the defendants in this case; but there remains a question about the effectiveness of the Firm's withdrawal as counsel in the other matters.

## BACKGROUND

### The Parties

Epstein Becker represents plaintiff Stratagem Development Corporation in the instant action, involving an alleged breach of a joint venture agreement to develop certain properties. The real estate in question comprises buildings in midtown Manhattan known as "Heron Tower I" and "Heron Tower II,"[2] and the present dispute involves Heron Tower II. Plaintiff Stratagem's role in the venture was to acquire parcels of land for real estate development. The role of the defendants, Heron International N.V. and Heron Properties, Inc. (hereinafter "Heron entities") was to develop the sites for the joint benefits of the participants in the venture. Complaint ¶¶ 12–19.

### The "Bevona Matters"

During the same time period, plaintiff's counsel, Epstein Becker, also represented a wholly-owned subsidiary of defendant Heron Properties.[3] That representation is in the context of a labor lawsuit and a related labor arbitration involving the security guards at Heron Tower I, and is essentially unrelated to this action. The subsidiary is known as Fidelity Services Corporation ("FSC"),[4] and the labor matters are referred to by the parties as the *"Bevona* matters."[5] Affidavit of Peter K. Kompaniez, dated October 16, 1990 (hereinafter "Kompaniez Moving Aff."), at ¶ 3; Affidavit of Jerrold F. Goldberg, dated October 24, 1990, ¶¶ 8, 10. The *Bevona* lawsuit is currently on the suspense docket of the United States Court of Appeals for the Second Circuit pending settlement discussions; the related labor arbitration is in the discovery phase, with Epstein Becker, until recently, assisting in the union's audit of FSC's books and with document production. Kompaniez Moving Aff. at ¶ 8.

### The Present Action

On November 10, 1989, Jerrold F. Goldberg, a member of Epstein Becker, wrote to Kathleen Panciera, an officer of Heron, to review the status of the *Bevona* matters. Goldberg–Panciera letter of 11/10/89, attached as Exhibit A to Kompaniez Moving Aff.

On June 27, 1990, Heron terminated the agreement between it and Stratagem relating to Heron Tower II. Letter from Gerald Ronson to Simon Shane, dated June 27, 1990, annexed as Exhibit B to Kompaniez Moving Aff.

Just over two weeks later, Goldberg again wrote to Panciera. After listing the active matters in which his firm represents FSC "and other Heron Entities," he stated:

In light of the recent unfortunate developments between Heron and Stratagem Development Corp., of which I am sure you are aware, we must raise the question of our continued representation of

---

1. The Court does not reach defendants' other ground for moving to disqualify plaintiff's counsel, *i.e.,* that a member of the firm representing plaintiff should be called as a witness.

2. Heron Tower II has not yet been built. Defendants' Memorandum of Law in Support of Motion to Disqualify (hereinafter "Def.Mem. I"), at 3 n. 2.

3. The current status of Epstein Becker's representation of that subsidiary is in question, *post.*

4. Heron Tower I is owned by the Overton–LaCholla Joint Venture. Affidavit of Jerrold

Goldberg (hereinafter "Goldberg Aff."), at ¶ 8. FSC owns the two corporations which own 50.1% of the Overton–LaCholla Joint Venture. Reply Affidavit of Peter Kompaniez, dated October 29, 1990, at ¶ 6. Epstein Becker admits that "a Heron entity has ... a 50.1% interest in Heron Tower I...." Goldberg Aff. at ¶ 10.

5. FSC's co-plaintiff in the *Bevona* action, Property Advisory Group ("PAG") shares a common parent company with plaintiff Stratagem Development Corporation. Shane Aff. at ¶ 17.

Fidelity Services Corporation in connection with this labor matter.

Goldberg–Panciera Letter of 7/13/90, attached as Exhibit C to Kompaniez Moving Aff., at 1–2.

Kenneth J. Kelly, Esq., of Epstein Becker, followed up with a letter, dated August 3, 1990, to Ms. Panciera. The letter pointedly stated:

> We will soon commence an action against Heron Properties and Heron International. Unless we hear otherwise from you, we plan to resign as Heron's counsel in the federal action and arbitration on the day we file Stratagem's complaint.

Kelly–Panciera Letter of 8/3/90, attached as Exhibit D to Kompaniez Moving Aff.

On August 8, 1990, Peter Kompaniez, the CEO of FSC, wrote back, expressing "surprise[ ] at your statement that your firm 'will soon commence an action against Heron Properties and Heron International.'" He stated that it would be a violation of various provisions of New York's Code of Professional Responsibility for Kelly's firm to sue Heron. Kompaniez–Kelly letter of 8/8/90, attached as Exhibit E to Kompaniez Moving Aff.

Another Epstein Becker lawyer, Samuel Goldman, replied on August 14, 1990, as follows:

> From the tone and tenor of your letter, it is apparent that you would feel uncomfortable if we were to continue to represent Fidelity Service Corp. in the captioned litigation. Accordingly, we hereby notify you that we are withdrawing as counsel to Fidelity in this lawsuit.
>
>     \*    \*    \*    \*    \*    \*
>
> As you are aware, we have represented Stratagem Development Corp. in all of its dealings with Heron since the inception of the relationship between these two companies. There is no conflict in our continued representation of Stratagem.

Goldman–Kompaniez Letter of 8/14/90, attached as Exhibit F to Kompaniez Moving Aff.

The parties' attorneys exchanged two further letters in subsequent weeks; by September 4, 1990, Michael Delikat, Esq., of the law firm of Baer Marks & Upham ("Baer Marks") had contacted Epstein Becker to advise that it would take over the representation of FSC in the *Bevona* matters. During that conversation, as related in a confirming letter from Mr. Delikat to Mr. Goldberg, Mr. Delikat indicated that he would "prepare a formal substitution and forward same to you under separate cover. In the meantime, I would appreciate receiving a copy of the entire file at your earliest convenience." Delikat–Goldberg letter of 9/4/90, attached as Exhibit A to Affidavit of Michael Delikat, dated October 29, 1990, at 1.

The contemplated exchange of files and substitution forms did not take place at that time.[6] Less than a month later, on October 2, 1990, Epstein Becker filed the complaint in this action.

Defendants point out that coincidentally, also on October 2, 1990, Mr. Goldberg wrote to Stanley Bass, Staff Counsel of the United States Court of Appeals for the Second Circuit to attend to some ministerial matters in the *Bevona* actions. In that letter, he identified Epstein Becker as the attorneys for Fidelity Service Corp.[7] By way of explanation, Mr. Goldberg now submits that he was left no alternative but to describe himself as FSC's counsel because

---

**6.** The parties engage in a great deal of finger-pointing on this subject: Delikat, on behalf of FSC, states that he never sent the form because Epstein Becker did not forward the files as promised; Epstein Becker in turn accuses FSC of directing Baer Marks not to send the form in order to better situate Heron to prevail in the instant motion. The Court notes that the letter does not indicate that Delikat's sending of the form was contingent upon receipt of the files.

**7.** The letter reads in part:

> We are the attorneys for the appellants, Fidelity Service Corp. and Property Advisory Group, in the above-referenced matter.... Counsel hereby jointly request that the matter be continued in an inactive status for an additional 60 days, and that we notify your office on or before December 4, 1990 as to the status and whether the case should be reinstated to active consideration.

Goldberg–Bass letter of 10/2/90, attached as Exhibit J to Kompaniez Moving Aff., at 1.

of Baer Marks' failure to forward the signed substitution form.

On October 9, 1990, Heron's counsel in the instant action wrote to this Court, indicating its intention to file the present motion; that same day, Epstein Becker sent the files in the *Bevona* matter to Baer Marks. Two days later, Mr. Goldberg forwarded to Baer Marks a substitution of counsel form. The substitution form has not yet been filed.

## DISCUSSION [8]

Canon 5 of the New York Code of Professional Responsibility, provides that an attorney owes a duty of undivided loyalty to the client.[9] Where an attorney takes part in a suit against an existing client, the propriety of the conduct "... must be measured not so much against the similarities in litigation, as against the duty of undivided loyalty which an attorney owes to each of his clients." *Cinema 5, Ltd. v. Cinerama, Inc.*, 528 F.2d 1384, 1386 (2d Cir.1976). The duty applies with equal force where the client is a subsidiary of the entity to be sued. *See Glueck v. Jonathan Logan, Inc.*, 512 F.Supp. 223, 227 (S.D.N.Y.), *aff'd*, 653 F.2d 746 (2d Cir.1981) (firm representing trade association could not also represent individual client in suit against corporation belonging to association); *see also Rosman v. Shapiro*, 653 F.Supp. 1441 (S.D.N.Y.1987) (disqualifying defendant's attorneys because firm represented closely held corporation in which plaintiff and defendant each held 50% of the stock). In the case at bar, the relationship between the two entities represented by Epstein Becker, that of parent and wholly-owned subsidiary, is even closer than that between the parties in *Glueck* and *Shapiro*, because the liabilities of a subsidiary corporation directly affect the bottom line of the corporate parent. *A fortiori*, the duty of undivided loyalty, as set forth in Canon 5, attaches in this case. As the *Glueck* Court noted:

the Bar has an independent interest in avoiding even the appearance of impropriety, and that interest mandates a clear margin of protection against potentially conflicting arrangements.... [A]ny doubt in the disqualification situation is to be resolved in favor of disqualification.

512 F.Supp. at 228.

The Court must therefore consider whether Epstein Becker's actions in this case should disqualify it from representing plaintiff Stratagem. There are two different standards by which courts evaluate disqualification motions because of alleged dual representation; which standard to apply depends on whether the representation of the two clients is simultaneous or successive. When the firm concurrently represents both parties, Courts are to apply a *per se* prohibition; but if the case involves former clients of the firm, the Court will inquire into whether there is a "substantial relationship" between the two matters. *Fund of Funds Ltd. v. Arthur Andersen & Co.*, 435 F.Supp. 84, 95 (S.D.N.Y.), *aff'd in part, rev'd in part*, 567 F.2d 225 (2d Cir.1977) (citing *Cinema 5, supra*, 528 F.2d at 1386 (2d Cir.1976); *Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp.*, 518 F.2d 751 (2d Cir.1975); *Emle Industries, Inc. v. Patentex, Inc.*, 478 F.2d 562 (2d Cir.1973)) (other citations omitted).

Defendants in the present case argue that Epstein Becker did not effectively withdraw from its representation of FSC in the *Bevona* matters until at least October 9, when it finally sent the files to Baer Marks, and perhaps later, because the substitution form has not been filed to this day.[10] They therefore advocate the appli-

---

8. The burden of establishing the need for disqualification is on the moving party. *Rosman, supra*, 653 F.Supp. at 1444 n. 5. The Court has not held a hearing in this matter because, as set forth below, the Court concludes that the motion should be granted, even after accepting all the facts as alleged by Stratagem to be true. *Id.* at 1445 n. 7.

9. That provision states: "A lawyer should exercise independent professional judgment on behalf of a client."

10. Defendants cite *In re Benjamin*, 129 A.D.2d 886, 514 N.Y.S.2d 526, 527 (3d Dept.), *app. dism.* 70 N.Y.2d 666, 518 N.Y.S.2d 959, 512 N.E.2d 542 (1987) for the proposition that an attorney must formally move to withdraw, not just effectively withdraw, before bringing suit against a former

cation of the *per se* rule. Equally predictably, plaintiffs argue for application of the "substantial relationship" test, stating that FSC "has not been Epstein Becker's client since September 4, 1990," approximately one month before the instant complaint was filed. Plaintiff's Memorandum of Law, at 8.

■ As the Second Circuit has explained, in order to justify application of the more lenient "substantial relationship" test the firm in question must show that "the representation of a former client has been terminated and the parameters of such relationship have been fixed." *Cinema 5, supra,* 528 F.2d at 1387. In the present case, the parties vigorously dispute the question of precisely when, if ever, Epstein Becker effectively withdrew from representing FSC. However, Epstein Becker does concede that it represented FSC as late as September 4, 1990. *Id.* Accordingly, the record is undisputed that the Firm was clearly contemplating, if not actively planning, litigation against its client's parent corporation as early as July 13, 1990. *See* Goldberg–Panciera Letter of 7/13/90, *supra.* The Court must therefore conclude that the Firm was still in FSC's employ when it investigated and was drafting the complaint against FSC's parent company. *See Fund of Funds, supra,* 435 F.Supp. at 94 (deeming Arthur Andersen [the client] an "existing client" because Morgan Lewis [the firm] represented it at the time of the investigation and filing of the complaint). Because Epstein Becker had not clearly terminated its representation of FSC and fixed the parameters of its representation of FSC by the time preparations for the instant litigation were begun, Epstein Becker is *per se* ineligible to represent Stratagem in this matter. *Cinema 5, supra,* 528 F.2d at 1387.

Moreover, even if Epstein Becker could have resolved this problem by obtaining both clients' consent, such consent was not forthcoming from FSC. The Court of Appeals has explained that:

> Under the Code, the lawyer who would sue his own client, asserting in justification the lack of 'substantial relationship' between the litigation and the work he has undertaken to perform for that client, is leaning on a slender reed indeed. Putting it as mildly as we can, we think it would be questionable conduct for any attorney to participate in any lawsuit against his own client without the knowledge and consent of all concerned.

*Id.*

In the present case Epstein Becker did seek, in its letter of July 13, 1990, to "raise the question of our continued representation of Fidelity Services Corporation in connection with this labor matter." However, the letter was phrased, not as a request for FSC's consent to proceed with the Stratagem litigation, but as a request for FSC's consent to continue with the labor representation. The letter stated:

> Should you feel that a conflict, actual or potential, may exist, or should you want us to resign from this case because of our ongoing representation of Stratagem and affiliates, please let us know and we will resign as counsel in the labor matter.

Goldberg letter at 2. The follow-up letter dated August 3, 1990, reads less like a request for consent and more like a threat: "We will soon commence an action against Heron Properties and Heron International. Unless we hear otherwise from you, we plan to resign as Heron's counsel in the federal action and arbitration on the day we file Stratagem's complaint. Please advise." Kelly–Panciera letter of 8/3/90, at 1. Heron's reply, listing the provisions of the New York Code of Professional Responsibility which it believed Epstein Becker would be violating by suing Heron, is hardly the "knowledge and consent" that

---

client. Def.Mem. I at 24. After noting that the respondent attorney had filed two lawsuits against his client in the early summer of 1985, the court stated:

> [R]espondent's formal withdrawal on motion made in October 1985 from the [prior] action

does not excuse his failure to make such a motion in May 1985 when he effectively discontinued his representation of Roy [the client].

514 N.Y.S.2d at 527.

the Code requires in such a situation. Epstein Becker's third missive on the subject does not even purport to seek Heron's consent: "From the tone and tenor of your letter, it is apparent that you would feel uncomfortable if we were to continue to represent [FSC].... Accordingly, we hereby notify you that we are withdrawing as counsel to Fidelity in this lawsuit." Goldman–Kompaniez Letter of 8/14/90, at 1.

 As is evident from this series of letters, Epstein Becker was not able to obtain the requisite consent from its client FSC before undertaking representation adverse to FSC's parent company. *See* New York Code of Professional Responsibility, Ethical Consideration 5–16. Absent such prior consent, a firm is to remain with the client in the already-existing litigation and seek new counsel to represent the other, not vice-versa. *See Fund of Funds, supra,* 435 F.Supp. at 91, 96.

Epstein Becker points out that Samuel Goldman has been Stratagem's real estate lawyer since 1983. Affidavit of Simon R. Shane, Chairman of Stratagem, dated October 24, 1990, at ¶ 7. It thereby attempts to refute Heron's theory that Epstein Becker dropped FSC "like a hot potato" in order to represent a more favored client. Pl.Mem. at 12; Def.Mem. I at 29–31 (citing *Picker Int'l v. Varian Assocs.,* 670 F.Supp. 1363, 1365–1366 (N.D.Ohio 1987)).

Epstein Becker's obligations to Stratagem do not trump those it owes to FSC, even if they pre-dated them. Once Epstein Becker undertook to represent FSC, it assumed the full panoply of duties that a law firm owes to its client. Epstein Becker may not undertake to represent two potentially adverse clients and then, when the potential conflict becomes actuality, pick and choose between them. Nor may it seek consent for dual representation and, when such is not forthcoming, jettison the uncooperative client. *Picker Int'l, supra,* 670 F.Supp. at 1365. Under these circumstances, Epstein Becker has no choice but to withdraw from representing either client in this case.

## CONCLUSION

For the reasons stated above, defendants' motion for disqualification of plaintiff's counsel is GRANTED. Plaintiff shall file with the Court a Substitution of Counsel form, in accordance with Local Rule 3(c), signed by its principal and the replacement firm. This procedure shall be undertaken as quickly as possible so as not to further delay the proceedings.

SO ORDERED.