UNIVERSAL CITY STUDIOS,
INC., et al., Plaintiffs,

v.

Shawn C. REIMERDES,
et al., Defendants.

No. 00 CIV. 0277 LAK.

United States District Court,
S.D. New York.

May 23, 2000.

---

Leon P. Gold, William M. Hart, Jon A. Baumgarten, Proskauer Rose LLP, New York City, for Plaintiffs.

Martin Garbus, Frankfurt Garbus Klein & Selz, P.C., New York City, for Defendants.

Hal R. Lieberman, Ronald C. Minkoff, J. Richard Supple, Beldock Levine & Hoffman LLP, New York City, for Frankfurt Garbus Klein & Selz, P.C.

## MEMORANDUM OPINION

KAPLAN, District Judge.

This is an action by major motion picture studios, including Time Warner Entertainment Company L.P. ("Time Warner"), pursuant to the Digital Millenium Copyright Act[1] to enjoin defendants from posting on Internet web sites a computer program called DeCSS, which allegedly defeats an encryption system used by plaintiffs on digital versatile disks (DVDs) containing their copyrighted motion pictures. The matter now is before the Court on Time Warner's motion to disqualify defendants' new counsel on the ground that these attorneys currently are representing Time Warner in another case.

*Facts*

*Prior Proceedings in this Action*

Shortly after the commencement of this action, plaintiffs moved for a preliminary injunction. Defendants were represented at that time by attorneys who no longer are active in the case. The motion was granted for reasons set forth in an opinion, familiarity with which is assumed.[2] Although the Court offered the defendants an immediate trial, that offer was declined and the case became inactive for a time. Indeed, the original defendants other than Eric Corley settled with plaintiffs.

The Court conducted a Rule 16 conference on March 20, 2000 at which Martin Garbus, Esq. of Frankfurt, Garbus, Klein & Selz, P.C. appeared for the first time on behalf of Corley. After conferring with counsel, the Court fixed a schedule and a trial date. Plaintiffs raised no objection to the Frankfurt firm's appearance.

On April 5, 2000, plaintiffs moved to expand the preliminary injunction to restrain defendants not only from making the offending computer program available on their web sites, but from linking to other web sites on which the program remains available.[3] Three weeks later, plaintiff Time Warner moved to disqualify defendants' new counsel on the ground that he simultaneously is representing it in another action.

---

1. 17 U.S.C. § 1201 *et seq.*

2. *Universal City Studios, Inc. v. Reimerdes,* 82 F.Supp.2d 211 (S.D.N.Y.2000).

3. Plaintiffs had made such a request orally at the preliminary injunction hearing but the Court declined to entertain the request at that time subject to the plaintiffs' right to make the application in the form of a motion to modify. (Tr., Jan. 20, 2000, at 81–85)

At present, the parties in this action are engaged in expedited discovery. Trial is scheduled for July 17, 2000.

### The Other Action

The source of the Frankfurt firm's alleged conflict is another case pending in this Court, *Scholastic, Inc. v. Stouffer,*[4] which relates to the popular *Harry Potter* books. The books were written by J.K. Rowling and published by Scholastic, Inc. ("Scholastic"). Time Warner is the exclusive owner of, *inter alia,* all copyrights, trademarks, and exploitation rights in the first four *Harry Potter* books.[5] It has spent millions of dollars registering and protecting various trademarks and indicia of origin from these books, including the term and mark "Muggles."[6] Scholastic is merely a licensee of certain U.S. publishing rights under rights reserved to Rowling.[7]

In or about August 1999, Rowling, Scholastic and Time Warner received a claim from Nancy Stouffer, who purported to own the copyright and trademark in the term "Muggles."[8] Time Warner and the others retained the Frankfurt firm in connection with the claim in or about September 1999.[9]

In early November 1999, Time Warner engaged its New York intellectual property litigation counsel, O'Melveny & Myers, to bring an action in this Court on behalf of Time Warner and Rowling relating to a proposed companion book by another publisher (the *McMeel Litigation* ). O'Melveny commenced suit on November 16, 1999.[10]

At about the same time, Scholastic, Rowling and Time Warner decided to commence a declaratory judgment action against Stouffer. Inasmuch as Time Warner had taken the lead and paid all the attorneys' fees and costs in the *McMeel Litigation,* Time Warner and Scholastic agreed that Scholastic's outside litigation counsel, the Frankfurt firm, would handle the *Stouffer* case and that Scholastic would be responsible for paying its fees.[11] In order to expedite the filing of the case, however, Time Warner directed O'Melveny to send a copy of the *McMeel* complaint to Frankfurt.[12] Frankfurt then commenced the *Stouffer* case on November 22, 1999.[13]

On or about April 12, 2000, a Time Warner in-house attorney telephoned the Frankfurt partner responsible for the *Stouffer* lawsuit, Edward Rosenthal, to discuss the firm's conflict of interest. Two days later, Mr. Rosenthal advised Time Warner that he had reviewed the two matters and concluded that there was no conflict. Time Warner disagreed and asked that the firm withdraw in this case. Nearly a week later, Mr. Rosenthal wrote Time Warner, stating that the Frankfurt firm did not believe that there was "any disqualifiable conflict created by [its] representation" of defendant Corley in this action and its representation of Time Warner in *Stouffer* because the two cases involve entirely different issues. He suggested that Time Warner retain separate counsel in *Stouffer* if it remained concerned.[14]

### Discussion

Attorneys practicing in this Court must adhere to the Code of Professional Responsibility adopted by the Appellate Division of the New York Supreme Court.[15]

**4.** 99 Civ. 11480(AGS).

**5.** Montan Decl. ¶ 4–5.

**6.** *Id.* ¶ 6.

**7.** *Id.* ¶¶ 4–5.

**8.** *Id.*

**9.** *See* Chilton Decl. ¶ 2.

**10.** Montan Decl. ¶ 8.

**11.** *Id.* ¶¶ 9–11.

**12.** *Id.* ¶ 12.

**13.** Chilton Decl. ¶ 4.

**14.** *Id.* ¶¶ 6–7 & Ex. B.

**15.** *See* S.D.N.Y. CIV. R. §§ 1.3, 1.5(b)(5).

Canon 5 of the Code states that "[a] lawyer should exercise independent professional judgment on behalf of a client," and Disciplinary Rule DR 5–105 proscribes a lawyer from representing a client if that representation is of interests differing from or adverse to those of another existing client.

In *Cinema 5, Ltd. v. Cinerama, Inc.,*[16] the Second Circuit held that it is improper *per se* for an attorney to participate in a lawsuit against his or her own client in a situation in which the lawyer has traditional attorney-client relationships with both clients.[17] More recently, the circuit "has established alternative guidelines for a district court to follow ... depending on the particular facts of the case." [18]

This more flexible approach stems from *Glueck v. Jonathan Logan, Inc.,*[19] where the circuit faced the question whether a law firm's suit against a member of an association which it represented implicated the standard of *Cinema 5.* The court framed the inquiry as "whether there exist sufficient aspects of an attorney-client relationship for purposes of triggering inquiry into the potential conflict involved." [20] The court answered this question in the negative, holding that (1) the association member was a client only in a vicarious sense, and (2) the "risks against which Canon 5 guards will not inevitably arise" in such a situation.[21] In those situations, a standard less stringent than *Cinema 5's per se* test applies.

This Court built upon *Cinema 5* and *Glueck* in *Commercial Union Insurance Co. v. Marco International Corp.,*[22] a case presenting the question whether an insurance company's longstanding counsel was disqualified from representing the carrier in coverage litigation with its insured because it simultaneously was representing the insured, as a nominal plaintiff, in bringing a subrogation claim to recover for the benefit of the carrier a loss for which the carrier already had indemnified its insured. The Court examined the relationships among the insured, the carrier and the attorneys. It found that the insured was obliged to assign to the carrier its right to prosecute and recover on any claim against third parties for the loss on which the carrier made payment. Thus, the insured had no significant economic or other interest in the subrogation case. Moreover, in light of the provisions of the policy, the insured had no role in selecting, paying or controlling the actions of counsel in pursuing that action. In consequence, the Court held that the lawyers' client in the subrogation case in substance was the carrier, not the insured in whose name the case was brought, and refused to disqualify counsel.

■ *Commercial Union,* upon which Frankfurt places its principal reliance, does not support its contention that there is no breach of the canons and disciplinary rules here. Unlike the insured in *Commercial Union.* Time Warner has substantial interests at stake in the *Stouffer* case. It appears, in fact, that its interests

---

**16.** 528 F.2d 1384 (2d Cir.1976).

**17.** *Id.* at 1387. *Accord, e.g.,* RESTATEMENT OF THE LAW GOVERNING LAWYERS § 209(2) (Prop. Final Draft No. 1 1996) (lawyer may not represent one client against another currently represented client even if matters unrelated). Plaintiff's counsel was a partner of two separate firms—one of which represented Cinema 5, Ltd. in the matter before the court, the other which represented Cinerama in an unrelated matter. There was no question that plaintiff's counsel—or his firm—as directly representing both plaintiff and defendant simultaneously.

**18.** *Hartford Accident & Indemnity Co. v. RJR Nabisco. Inc.,* 721 F.Supp. 534, 538 (S.D.N.Y. 1989) (Walker, J.); *Carro, Spanbock, Kaster, & Cuiffo v. Rinzler,* No. 88 Civ. 5280(MJL), 1992 WL 196758 (S.D.N.Y.1992).

**19.** 653 F.2d 746 (2d Cir.1981).

**20.** *Glueck,* 653 F.2d at 748–49 (internal citations omitted).

**21.** *Id.* at 749.

**22.** 75 F.Supp.2d 108 (S.D.N.Y.1999).

there substantially exceed those of either Scholastic or Rowling. If Stouffer were to prevail in her contention that she owns the copyright and trademark in "Muggles," the value of Time Warner's film and ancillary merchandising rights in the *Harry Potter* books would be impaired. Indeed, the complaint in *Stouffer* alleges that Time Warner currently is developing a theatrical motion picture referring to the imaginary world created by Rowling in the *Harry Potter* books and that all of the plaintiffs in the *Stouffer* case have plans for merchandising projects intended to build on the books.[23] Moreover, while the extent to which it has participated in the *Stouffer* case thus far appears to have been limited, Time Warner house counsel have been provided drafts of legal papers in advance of filing and have the right to control the actions of the Frankfurt firm as its counsel. This situation is quite distinct from that in *Commercial Union,* where the insured had assigned all of its rights to the carrier and was obliged to cooperate with the carrier's assertion of the subrogation claim. Thus, Time Warner, unlike the insured in *Commercial Union,* is party to a real attorney-client relationship with the Frankfurt firm. The fact that it agreed to use Scholastic's litigation counsel in *Stouffer* and, indeed, that there may be little love lost between Time Warner and Mr. Garbus by virtue of events gone by cannot detract from this fact. When the Frankfurt firm agreed to represent Time Warner along with Scholastic and Ms. Rowling, it surrendered the right to represent another client in litigation against any of them.

The fact that the Frankfurt firm has responded to the motion to disqualify in part by moving in *Stouffer* for leave to withdraw as counsel for Time Warner is of no assistance to it. "It is ... established law that an attorney cannot avoid disqualification under the *Cinema 5* rule merely by 'firing' the disfavored client, dropping the client like a hot potato, and transforming a continuing relationship to a former relationship by way of client abandonment." [24] Indeed, the offense inherent in taking on the conflicting representation is compounded by seeking to "fire" the client in pursuit of the attorney's interest in taking on a new, more attractive representation. If, as one judge has written, "the act of suing one's client is a 'dramatic form of disloyalty,'" [25] what might be said of trying to drop the first client in an effort to free the attorney to pursue his or her self-interest in taking on a newer and more attractive professional engagement?

In response to these considerations, the Frankfurt firm has submitted a declaration of Professor Charles W. Wolfram, who contends that Time Warner is a "non-primary" or "accommodation" client, that only "primary" clients may seek disqualification of counsel afflicted with conflicts, and in any case that a lawyer representing a non-primary client "can drop the accommodation client (like a hot potato, or otherwise) and file suit against the former accommodation client." [26] He relies principally on *Allegaert v. Perot* [27] and the proposed Restatement. With respect, this Court disagrees.

It is worth noting at the outset that Professor Wolfram does not seek to defend the proposition that the Frankfurt firm acted properly in taking on defendants in a case brought against them by Time War-

**23.** *Stouffer* cpt. ¶ 19.

**24.** *Burda Media, Inc. v. Blumenberg,* No. 97 Civ. 7167(RWS), 1999 WL 1021104, at *3 n. 1 (S.D.N.Y. Nov.8, 1999). *Accord, Stratagem Dev. Corp. v. Heron Int'l N.V.,* 756 F.Supp. 789, 794 (S.D.N.Y.1991) (Counsel "cannot undertake to represent two potentially adverse clients and then ... pick and choose between them.").

**25.** *Id.* (quoting *British Airways, PLC v. Port Authority,* 862 F.Supp. 889, 899 (E.D.N.Y. 1994)).

**26.** Wolfram Decl. ¶¶ 14–15.

**27.** 565 F.2d 246 (2d Cir.1977).

ner, among others, while simultaneously representing Time Warner. Rather, his point is limited to whether disqualification at the behest of an accommodation client is an appropriate remedy in such a situation. Indeed, the Restatement upon which he relies makes plain that the firm's action was not appropriate.[28]

Second, Professor Wolfram's conclusion that Time Warner is a non-primary or accommodation client rests on a series of factual assumptions—that Time Warner must have understood that the Frankfurt firm's ultimate allegiance is to Scholastic in the event of a conflict between Time Warner and Scholastic, that Time Warner "could not reasonably expect that the law firm would keep any information of interest to [Scholastic] confidential from it,"[29] that Time Warner has no economic stake in the *Stouffer* case because "(as I assume) its interests [are] fully protected pursuant to its contractual arrangements for indemnification with either or both of Ms. Rowling and Scholastic,"[30] that Time Warner was named as a plaintiff in *Stouffer* only at the direction of Scholastic,[31] that Time Warner "plays no part in controlling the activities" of the lawyers,[32] and that Time Warner's minor role in the case "was dictated entirely by considerations of the ultimate success of" Scholastic and Ms. Rowling.[33] These assumptions, however, are demonstrably wrong (e.g., the assumption that Time Warner has no economic stake in the case), unproved, or are unwarranted inferences drawn from assertions made by the Frankfurt firm. The fact, for example, that Time Warner's house counsel have not commented on drafts of legal papers provided to them in advance of filing does not show that Time Warner "plays no part in controlling" the firm's actions. As noted earlier, it may reflect nothing more

than satisfaction with the work product. And surely this record, unlike that in *Commercial Union,* does not justify the conclusion that Scholastic is contractually entitled to control the *Stouffer* litigation by virtue of an assignment to it of Time Warner's interests.

Finally, even if the facts warranted the conclusion that Time Warner is an accommodation client in *Stouffer* in the sense that Professor Wolfram uses the term, the Court rejects his contention that the Frankfurt firm is entitled, without Time Warner's consent, to drop it "like a hot potato, or otherwise" simply because it has found a case more to its liking. *Allegaert* involved a different situation entirely. The law firms sought to be disqualified there from suing the bankruptcy estate of duPont Walston Incorporation ("Walston") formerly had represented both their regular clients and Walston, with whom their regular clients then were aligned in something akin to a joint venture, in a derivative suit challenging the alignment. The Circuit affirmed the district court order declining to disqualify the law firms on the ground that Walston, in view of the "joint venture" in which it was engaged with the law firms' regular clients, could not reasonably have believed that any information they gave to the lawyers in the course of the derivative suit would be withheld from the regular clients.[34] The case therefore involved the question whether the lawyers were disabled from suing a former client by virtue of Canon 4's requirement that the lawyer preserve client confidences. The Circuit held only that Canon 4 is not implicated where there could have been no confidences to begin with. But that is a far cry from saying that a lawyer in an existing relationship simply may fire a client for the lawyer's own advantage, a

**28.** Restatement Of The Law Governing Lawyers § 209(2) (Prop. Final Draft No. 1 1996).

**29.** Wolfram Decl. ¶ 15.

**30.** *Id.* ¶ 17.

**31.** *Id.*

**32.** *Id.*

**33.** *Id.*

**34.** *Id.* at 250–51.

matter that implicates Canon 5's require-ment of the lawyer's obligation of utmost fidelity to the client. Thus, the Court concludes that the Frankfurt firm is acting improperly in seeking to represent defen-dants here despite its representation of Time Warner in *Stouffer*. That, however, does not necessarily mean that it should be disqualified.

Disqualification motions are subject to abuse for tactical purposes. They may require sometimes complex satellite litiga-tion extraneous to the case before the court. Disqualification also deprives a client of counsel of its choice. Moreover, professional disciplinary bodies, including the Grievance Committee of this Court, are available to police the behavior of counsel. Accordingly, the Second Circuit has made clear that disqualification is ap-propriate only if a violation of the Code of Professional Responsibility gives rise to a significant risk of trial taint.[35] That is to say, disqualification for an alleged conflict of interest is appropriate only if there is a significant risk that the conflict will affect the attorney's ability to represent his or her client with vigor or if the attorney is in a position to use privileged information acquired in the representation of a client against that client in another matter.[36]

There is substantial reason to believe that the motion to disqualify the Frankfurt firm is motivated at least partly by tactical considerations. Time Warner knew of the conflict as early as March 14 but did not even raise the issue with the firm until April 12, well after a scheduling order was entered and more than a week after plain-tiffs had moved to expand the preliminary injunction. Plaintiffs have been pressing for, and recently obtained, an acceleration of the trial in this action and thus stand to gain by forcing defendants to find and educate new counsel. Moreover, Time

Warner's belated objection to the Frank-furt firm's appearance here comes against a background of considerable apparent an-imosity between Martin Garbus, Esq. of the Frankfurt firm and Time Warner.[37]

The view that the motion is tactically motivated, at least in part, draws support from the fact that Time Warner has made no effort to show that its interests either in this case or in *Stouffer* would be affect-ed adversely by the Frankfurt firm's con-flict. There is no suggestion that the Frankfurt firm is privy to any Time War-ner secrets by virtue of the *Stouffer* repre-sentation that could be used to its disad-vantage here. There is no suggestion that the firm's representation of Time Warner in *Stouffer* would suffer, which seems un-likely in view of the firm's long standing relationship with Scholastic and the sub-stantial congruence of Time Warner's in-terests there with those of Scholastic. In short, Time Warner has failed to establish any material risk that it would be preju-diced inappropriately by allowing the Frankfurt firm to continue in this litigation notwithstanding its role in the *Stouffer* case. Moreover, defendants here certainly do not object to Frankfurt's representation of them notwithstanding its obligations to Time Warner in *Stouffer*.

### Conclusion

The situation before the Court is trou-blesome. The lawyers' breach of ethics cannot reasonably be minimized. Even acknowledging that the Frankfurt firm, in consequence of sloppy conflict checking procedures, appears to have agreed to take on this case without realizing that doing so would be improper, its insistence on pro-ceeding once it learned of the conflict was improper. In other circumstances, the Court well might disqualify it. But there are substantial factors pointing to a con-trary result. There is no real risk of

---

**35.** *Glueck v. Jonathan Logan. Inc.*, 653 F.2d 746, 748 (2d Cir.1981); *see also Evans v. Artek Systems Corp.*, 715 F.2d 788 (2d Cir. 1983).

**36.** *See, e.g., Board of Ed. of the City of New York v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir.1979).

**37.** Garbus Decl. ¶¶ 17–19.

tainting the trial or, putting it another way, of prejudicing Time Warner absent disqualification. Disqualification at this stage would prejudice defendants in that they would be forced either to find and educate new counsel for an important trial that now is less than two months away or seek an adjournment and thus perhaps prolong the duration of the preliminary injunction. Time Warner sat on its hands for too long to have substantial claims on the Court's exercise of its discretion.

Accordingly, the motion to disqualify defendants' counsel is denied. The proper place for this controversy is in the appropriate professional disciplinary body.

SO ORDERED.