CITY OF KALAMAZOO,
et al., Plaintiffs,

v.

MICHIGAN DISPOSAL SERVICE,
et al., Defendants.

No. 1:99–CV–338.

United States District Court,
W.D. Michigan,
Southern Division.

April 30, 2001.

John A. Ferroli, Dykema Gossett, PLLC, Grand Rapids, MI, Robert H. Cinabro, Office of the City Attorney, Kalamazoo, MI, for City of Kalamazoo.

John A. Ferroli, Dykema Gossett, PLLC, Grand Rapids, MI, Scott S. Brinkmeyer, Mika, Meyers, Beckett & Jones, PLC, Grand Rapids, MI, for Cork Street Landfill Group.

Gary A. Trepod, Hubbard, Fox, Thomas, White, et al, Lansing, MI, for Michigan Disposal Service Corporation, MDS Liquidating Trust, Dell View Corporation, and James J. Dekruyter.

Mark F. Miller, DeNardis, McCandless & Muller, PC, Detroit, MI, for Parker Hannifn Corporation.

Todd R. Dickinson, Fisher & Dickinson, PC, Ada, MI, for Brunswick Corporation.

Christopher E. Tracy, Janice N. Pavel, Zevnik, Horton, Guibord, Chicago, IL, for Pneumo Abex Corporation.

## OPINION

QUIST, District Judge.

This Court has before it Plaintiffs' Appeal of Magistrate Judge Joseph G. Scoville's December 22, 2000, order disqualifying Plaintiffs' counsel, Dykema Gossett, PLLC ("Dykema Gossett"), from representing Plaintiffs in this case. Disqualification was sought by Defendant Brunswick Corporation ("Brunswick") on the basis that Dykema Gossett served as common counsel to a group of defendants, including Brunswick ( referred to herein as the "Joint Defense Group" or "Group"), in a prior action related to this case for recovery of response costs incurred in connection with the release or threatened release of hazardous substances from the West KL Avenue Landfill (the "West KL Litigation"). In a lengthy and thorough Opinion, Magistrate Judge Scoville reached the following conclusions: (1) Pursuant to the Joint Defense Agreement (the "Agreement") signed by the members of the Joint Defense Group, Dykema Gossett had a di-

rect attorney-client relationship with Brunswick, as a member of the Joint Defense Group; (2) Dykema Gossett's representation of Plaintiffs in this case is materially adverse to Brunswick; (3) the instant litigation, involving the Cork Street Landfill, is substantially related to the West KL Litigation; (4) because of the previous direct representation by Dykema Gossett, there was an unrebuttable presumption that Brunswick and members of the Joint Defense Group had shared confidential information with Dykema Gossett, or alternatively, applying a rebuttable presumption, Dykema Gossett failed to demonstrate that no confidential information was shared; (5) Brunswick did not waive the conflict; and (6) Plaintiffs failed to show that other considerations weighed against requiring disqualification of Dykema Gossett.

This appeal is before this Court by reason of an Order of Temporary Reassignment issued on February 27, 2001, by Chief Judge Enslen, reassigning the instant appeal from Judge McKeague to this Court on the basis that Judge McKeague may have a conflict of interest in the resolution of this appeal. This appeal is subject to the "clearly erroneous" standard set forth in 28 U.S.C. § 636(b)(1)(A). Plaintiffs raise several arguments in support of their claim that Magistrate Judge Scoville's order of disqualification must be reversed. The Court will address each issue separately below. Because the essential facts are adequately set forth in the magistrate judge's opinion, the Court will incorporate those facts by reference.

### Issues

Plaintiffs raise the following issues on appeal:

1. Whether the magistrate judge applied incorrect legal standards and improperly interpreted the Agreement in concluding that Dykema Gossett had a direct attorney client relationship with Brunswick?

2. Whether the magistrate judge applied an incorrect legal standard with regard to the issue of shared confidential information?

3. Whether the magistrate judge incorrectly concluded that Brunswick transferred confidential information to Dykema Gossett in Joint Defense Group meetings in the West KL Litigation that is substantially related to the instant case?

4. Whether, in the absence of a direct attorney-client relationship, Brunswick presented sufficient evidence to carry its burden of demonstrating an implied attorney-client relationship?

5. Whether Brunswick would be prejudiced by Dykema Gossett's current representation, even assuming the existence of a conflict of interest?

6. Whether, assuming the existence of a conflict of interest as to Brunswick, the magistrate judge improperly disqualified Dykema Gossett with respect to the remaining Defendants?

### Discussion

## I. Existence of Direct Attorney–Client Relationship

Plaintiffs cite two reasons why the magistrate judge erred in concluding that Dykema Gossett had an attorney-client relationship with Brunswick. First, they contend that the magistrate judge failed to properly apply Michigan Rule of Professional Conduct ("MRPC") 1.13(a), which applies to an attorney's representation of an organization, including unincorporated associations. Second, Plaintiffs contend that the Magistrate Judge erred in con-

cluding that the provisions of the Agreement supported the existence of a direct attorney-client relationship between Dykema Gossett and Brunswick. The Court notes that Plaintiffs do not argue that Dykema Gossett did not have a direct attorney-client relationship with the Joint Defense Group.[1]

Plaintiffs contend that had the magistrate judge correctly applied MRPC 1.13(a), he could not have concluded that Dykema Gossett had an attorney-client relationship with Brunswick. That rule provides:

> A lawyer employed or retained to represent an organization represents the organization as distinct from its directors, officers, employees, members, shareholders, or other constituents.

Mich. Rules Of Prof'l Resp. R. 1.13(a). The comments to MRPC state that the rule applies to unincorporated associations. Magistrate Judge Scoville cited Rule 1.13 in noting that the once generally accepted rule that an attorney representing an unincorporated association also represents the individual members solely by virtue of their membership in the association has been replaced by rules that treat unincorporated associations like corporations for purposes of determining an attorney's ethical responsibility. Although Magistrate Judge Scoville acknowledged that a straightforward application of Rule 1.13 makes sense in the case of a trade association or union, he found that limiting the attorney-client relationship to the Group makes little sense in this case because, unlike the typical union or trade association, the association at issue here was not an ongoing concern but rather was formed by a group of defendants for the limited

purpose of presenting a joint defense on issues common to the defendants.

Plaintiffs contend that Rule 1.13 does not provide an exception for an unincorporated association under any circumstance, including joint defense groups, as demonstrated by more recent case law. This Court disagrees because even recent cases recognize that Rule 1.13(a) is not an absolute. For example, in *Willig, Williams & Davidson v. Walters*, No. CIV. A. 93–0642, 1993 WL 224723 (E.D.Pa. June 22, 1993), the court stated: "Pursuant to [the entity theory of representation adopted by Rule 1.13], an attorney who represents an organization does not automatically represent its individual members. A case by case review on the representation issue is appropriate." *Id.*, 1993 WL 224723, at *3. Similarly, in *United States v. American Society of Composers, Authors and Publishers* ("*ASCAP*"), 129 F.Supp.2d 327 (S.D.N.Y.2001), while observing that "[t]he mere status of being a member of an unincorporated association no longer makes one a client of the association's attorneys," the court found that the particular circumstances of each case must be examined to determine whether an attorney-client relationship existed between the association's attorney and a member. *Id.* at 337–38 (quoting N.Y.C. Ass'n B. Comm. Prof'l Ethics Formal Op. 1 (1999)("Formal Op. 99–1")). The court identified the following factors as relevant to the determination: (1) the nature of disclosures to the attorney; (2) the member's expectations of the attorney; (3) the reasonableness of those expectations; (4) whether the attorney affirmatively assumed a duty to represent the member; (5) whether the member had independent representation; (6) whether the attorney

---

1. Nor could Plaintiffs do so based upon admissions by counsel from Dykema Gossett during the hearing on Brunswick's motion before Magistrate Judge Scoville that Dykema Gossett represented the Joint Defense Group. (10/20/00 Hr'g Tr. at 34–35.)

representing the association represented the member prior to representing the association; and (7) whether the member relied upon the attorney's representation of its individual interest. *Id.* at 338 (citing Formal Op. 99–1).

In *Shadow Isle, Inc. v. American Angus Association,* No. 84–6126–CV–SJ–6, 1987 WL 17337 (W.D.Mo. Sept.22, 1987), the plaintiff sued, among others, an incorporated, not-for-profit trade association of which the plaintiff was a member. The association was represented by the law firm that served as corporate counsel to the association. The plaintiff moved for disqualification of the association's counsel on the grounds that representation of the association by its counsel created a conflict of interest because the plaintiff had an attorney-client relationship with the association's counsel by virtue of the plaintiff's membership in the association. The court found that disqualification was unnecessary because of Rule 1.13 and the fact that the association's counsel had never considered the plaintiff or the individual members of the association to be clients. *Id.,* 1987 WL 17337, at *3. In rejecting various cases cited by the plaintiff for the proposition that members of an unincorporated association are to be considered clients of the association's lawyers, the court specifically distinguished the case of *Glueck v. Jonathan Logan, Inc.,* 653 F.2d 746 (2d Cir.1981). In *Glueck,* the plaintiff's counsel represented a not-for-profit incorporated trade association of manufacturers in the negotiation of multi-employer collective bargaining agreements with a union. The negotiation of such agreements was the sole function of the association. The plaintiff, a former executive of Jonathan Logan, Inc., sued Logan alleging breach of his employment contract. R & K Originals, a division of Logan, was a member of the association and its president, Eagle, was the executive vice-president of the association and a member of the association's bargaining committee. Logan moved to disqualify the plaintiff's lawyers on the basis that Eagle had previously met with lawyers from the firm representing the plaintiff to discuss labor matters. Applying the strict standards applicable to a lawyer who seeks to represent two adverse clients, the district court granted the motion on the basis that the plaintiff's lawyers had not shown there would be no actual or apparent conflict. The Second Circuit affirmed, but on a different basis. The court of appeals determined that the strict standards governing simultaneous representation of adverse interests should not be "inevitably invoked whenever a law firm brings suit against a member of an association that the firm represents." *Glueck,* 653 F.2d at 749. The court reasoned that if those standards were invoked, "many lawyers would be needlessly disqualified because the standards of Canon 5 impose upon counsel who seeks to avoid disqualification a burden so heavy that it will rarely be met." *Id.* Instead, the court observed that "[d]isqualification will ordinarily be required whenever the subject matter of a suit is sufficiently related to, the scope of the matters on which a firm represents an association as to create a realistic risk either that the plaintiff will not be represented with vigor or that unfair advantage will be taken of the defendant." *Id.* at 750. The court concluded that such a risk existed because during the collective bargaining sessions the plaintiff's lawyers may have learned of the defendant's policies or practices bearing on the plaintiff's termination. *Id.* The *Shadow Isle* court found *Glueck* inapposite because *Glueck* involved an attorney's representation of a third party against a member of an existing trade association client, whereas in *Shadow Isle* there was no " 'switching sides' and attempting to represent a new

client against a party who was either an acknowledged client or had at least formerly dealt in confidence with the law firm." *Id.* 1987 WL 17337, at *4.

■ This Court concludes that Magistrate Judge Scoville's conclusion that a direct attorney-client relationship existed between Dykema Gossett and the individual Group members finds support both under *Glueck*, as this case does involve a law firm's "switching sides" in a matter substantially related to prior representation, and under an analysis of the factors listed in *ASCAP*. However, there is no need to resort to other authority because this Court agrees with Magistrate Judge Scoville's reasoning that it is illogical to conclude that Dykema Gossett represented the Joint Defense Group and not the constituent defendants in the Group. The Joint Defense Group existed solely within the confines of the West KL Litigation and had no existence or purpose apart from the litigation. This feature distinguishes the Joint Defense Group from the partnerships or trade associations usually involved where the issue of an attorney-client relationship with an individual member arises. Because there is no logical reason to consider the individual members apart from the Group, the Court concludes that the magistrate judge's determination that Dykema Gossett had a direct attorney-client relationship with Brunswick was not clearly erroneous.

Plaintiffs also argue that the magistrate judge erred in finding a direct attorney-client relationship between Dykema Gossett and Brunswick because the provisions of the Agreement do not show that Brunswick believed it had a direct attorney-client relationship with Dykema Gossett. The preceding discussion requires rejection of this argument because, as the Court understands it, Plaintiffs do not deny the existence of a direct attorney-client relationship with the Joint Defense Group, which was really nothing more than the sum of its parts—the individual members. For that reason, *Guiyang Bearing Factory, Inc. v. Guidon, Inc.*, No. 1:96–CV–411, 1997 U.S. Dist. LEXIS 21384 (W.D.Mich. Dec. 15, 1997), and the other cases cited by Plaintiffs requiring an express agreement for a direct attorney-client relationship are inapposite. In *Guiyang Bearing Factory*, the plaintiffs, Chinese corporations, alleged that attorneys retained by a business associate of the plaintiffs to form a United States corporation and negotiate and consummate a purchase of certain assets by the new corporation also had an attorney-client relationship with the plaintiffs. Other than the plaintiffs' subjective beliefs, there was no evidence that the attorneys ever believed that they represented the plaintiffs, nor was there any evidence of written or oral communications between the plaintiffs and the attorneys evidencing an attorney-client relationship. In contrast, there is no issue in this case that Dykema Gossett had an attorney-client relationship with the Joint Defense Group and was fully aware throughout its representation that it was advancing the interest of the Group's individual members. Thus, there is no need to consider whether the provisions of the Agreement explicitly recognize an attorney-client relationship between Dykema Gossett and the individual members.

■ Even considering the provisions of the Agreement, the Court cannot conclude that the magistrate judge was clearly erroneous in finding an attorney-client relationship between Dykema Gossett and the members. Plaintiffs assert that it was error for the magistrate judge to infer an attorney-client relationship from the various provisions of the Agreement because those provisions served other purposes not

relating to the attorney-client relationship between common counsel and members. However, those provisions, when read in the context of the entire Agreement and in light of the relationship of common counsel to the Joint Defense Group, serve to establish an attorney-client relationship with the members of the Group.

The first provision cited by the magistrate judge is the second paragraph of Section 14, captioned "Relationship of Members," which states:

> No member or its representative serving on any committee or subcommittee shall act or be deemed to act as legal counsel or a representative of any other Member, unless expressly retained by such Member for such purpose, and, except for such express retention, no attorney/client relationship is intended to be created between representatives on any committee or subcommittee and the Members.

(Agreement § 14.) The magistrate judge found that this provision served to disclaim any implied attorney-client relationship arising from a member's or a member's counsel's joint defense activities through service on a committee. The magistrate judge concluded that the absence of language referring to common counsel demonstrated an intent not to similarly negate the existence of an attorney-client relationship between common counsel and individual members. Plaintiffs contend that because Section 14 deals with the relationship of members and members' representatives to each other, this provision is insufficient to support an express or direct attorney-client relationship between individual members and common counsel. Plaintiffs also argue that it makes more sense to interpret Section 14 as including common counsel, because the very next section expressly excludes common counsel from the term "representa-

tive." While it is true that Section 14 addresses the relationship among members and their representatives, it is not unreasonable, in this Court's judgment, to infer from the absence of language regarding common counsel in that provision *or from a similar provision covering common counsel* an intent not to negate the attorney-client relationship between common counsel and individual members. Moreover, because Section 15 addresses the subject of indemnification, the two sections are not *in pari materia.* Thus, the express exclusion of common counsel from the term "representative" in Section 15 says nothing about Section 14. In fact, the exclusion in Section 15 is notable because the broad limitation of liability and indemnification provisions applicable to the members and their representatives for "any acts or omissions taken or made pursuant to Group direction [ ] in good faith" do not apply to common counsel. (Agreement § 15.)

The magistrate judge also cited the following language from the conflict of interest waiver in Section 7 as supporting the existence of an attorney-client relationship:

> If the Group engages common counsel, consultants or experts, or otherwise assigns a task to a Member or Members to be funded as a Shared Cost (collectively, "Representatives"), each Member agrees that: ... (3) it will not claim or assert that, based solely on said Representative's representation of the Group under the terms of this Agreement, said Representative has a conflict of interest in any future representation of any person or entity unless the subject matter relating to said representation arises out of or is connected to the West KL Avenue Landfill Site or involves or could involve any facts or information obtained from the Member during the term of this Agreement ....

(Agreement § 7.) The magistrate judge concluded that this language recognizes that Representatives, which include common counsel, have a relationship with individual members of the group that could give rise to a conflict of interest. Plaintiffs argue that this paragraph does nothing to establish an attorney-client relationship because the intent of the provision is to waive conflicts of interest, not to establish an attorney-client relationship. This argument must be rejected because, as a part of the contract, it is relevant to whether there was a meeting of the minds on the attorney-client relationship. *See Fletcher v. Bd. Of Educ. of Sch. Dist. Fractional No. 5,* 323 Mich. 343, 348, 35 N.W.2d 177, 180 (1948). As Magistrate Judge Scoville correctly observed, this paragraph indicates that the parties understood that individual members were being represented by common counsel.[2]

Finally, the magistrate judge found that Section 4.4 of the Agreement provided additional support for the attorney-client relationship. That section, captioned "Right of Separate Counsel," states:

> Notwithstanding that common counsel may be retained with respect to any matter, each Member reserves the right to select and retain its own counsel to represent such Member on any matter, and to advise common counsel that such Member is not to be represented by or through common counsel with respect to any such matter.

(Agreement § 4.4.) The Court finds no error in the magistrate judge's conclusion that this section of the Agreement presumes that common counsel represents the individual members. The provision clearly states that common counsel represents the individual members on the specified issues unless the member notifies common counsel that common counsel is not to represent the member with respect to the issue or matter.

## II. Issues Pertaining To Absence Of A Direct Relationship

Issues 2 through 4 raised by Plaintiffs are all based on the premise that the magistrate judge erroneously held that the individual members had a direct attorney-client relationship with Dykema Gossett. Because the Court has already concluded that Magistrate Judge Scoville did not err in concluding that Brunswick had a direct attorney-client relationship with Dykema Gossett, the Court need not address those issues.

## III. Prejudice

■ Plaintiffs contend that the magistrate judge erred in concluding that any hardship to Plaintiffs in obtaining new counsel was outweighed by the prejudice to Brunswick if Dykema Gossett is permitted to represent Plaintiffs in this case. In particular, Plaintiffs claim that there is really no prejudice to Brunswick because there is no indication that Brunswick ever disclosed any confidential information to Dykema Gossett regarding the volume or toxicity of Brunswick's waste stream, and any information Plaintiffs may possess about the arguments Brunswick intends to make in this case was obtained from the motions and briefs filed in the West KL Litigation, not from any confidences dis-

---

2. Plaintiffs also take issue with the magistrate judge's statement that Section 7(3) of the Agreement sets the standard for disqualification because the proper standard for disqualification under MRPC 1.9 is set forth in *Dana Corp. v. Blue Cross and Blue Shield Mutual of Northern Ohio,* 900 F.2d 882 (6th Cir.1990).

The Court does not interpret this language as setting a separate standard for disqualification; rather it creates an exception to the broad waiver. That conclusion, however, does not detract from the strong inference of an attorney-client relationship.

closed by Brunswick to Dykema Gossett. Plaintiffs argue that there is substantial prejudice to Plaintiffs because Dykema Gossett has represented the City of Kalamazoo for over 10 years on regulatory matters related to the Cork Street Landfill.

Having reviewed Magistrate Judge Scoville's opinion, it is evident to this Court that he did consider the hardship to Plaintiffs, noting that it may be "presume[d] that any party forced to retain new counsel midway in litigation will face expense and delay as a result." 125 F.Supp.2d 219, 245. Certainly, the substantial amount of money invested by the City of Kalamazoo in retaining Dykema Gossett and the familiarity of Dykema Gossett with the City's involvement in the Cork Street Landfill are factors demonstrating more than inconsequential prejudice. At the same time, the present conflict did not arise "out of the blue" for either Dykema Gossett or its client because the potential conflict should have been obvious to Dykema Gossett during the pendency of the West KL Litigation, while Dykema Gossett was simultaneously representing the City on a closely related matter. The Court also rejects Plaintiffs' attempt to minimize the prejudice to Brunswick, because the information disclosed in this case is not limited to information available in publicly filed documents as in *Guzewicz v. Eberle*, 953 F.Supp. 108 (E.D.Pa.1997), cited by Plaintiffs. Moreover, unlike *Guzewicz*, in this case Dykema Gossett actually represented Brunswick in a matter that was substantially related to the subject of the instant suit and, as the magistrate judge observed, participated in discussions regarding legal arguments, weaknesses in the plaintiffs' case, and allocation of costs for settlement purposes, none of which would have made its way into the documents filed with the court. Under these circumstances, the magistrate judge prop-

erly determined that disqualification was proper.

## IV. Disqualification As To All Defendants

In their final argument, Plaintiffs assert that the magistrate judge erred by not limiting the disqualification of Dykema Gossett only to Brunswick and allowing Dykema Gossett to continue to represent Plaintiffs with regard to the remaining Defendants. While it is true that the magistrate judge did not explicitly address this issue in his opinion, the Court finds no error in the blanket disqualification. It may be that Plaintiffs' proposal might work in some types of cases or under unique circumstances; however, allowing Dykema Gossett to continue to represent Plaintiffs against the other Defendants in this case would not eliminate the risk of disclosure or use of confidential information obtained from Brunswick, especially because there may, and most likely will, be issues common to all Defendants that might invite the use of such information. Rather than tempt the abuse of client confidences which the ethical rules are intended to prevent, this Court believes that it is best to err on the side of upholding the integrity and confidence in our legal system.

### *Conclusion*

For the foregoing reasons, the Court will affirm Magistrate Judge Scoville's December 22, 2000, order disqualifying Dykema Gossett as Plaintiffs' counsel.

An Order consistent with this Opinion will be entered.