438 F.Supp.2d 305 (2006)
In re METHYL TERTIARY BUTYL ETHER ("MTBE") PRODUCTS LIABILITY LITIGATION.
This document relates to: Basso, et al.
v.
Sunoco, Inc., et al., 03 Civ. 9050. Tonneson, et al.
v.
Sunoco, Inc., et al., 03 Civ. 8248.
Nos. 1:00-1898, MDL 1358(SAS), M21-88.
United States District Court, S.D. New York.
June 23, 2006.
*306 Michael Axline, Esq., Duane Miller, Esq., Miller, Axline & Sawyer, San Francisco, CA, John A. Sarcone, Esq., The Sarcone Law Firm PLLC, White Plains, NY, for Tonneson Plaintiffs.
Robin Greenwald, Esq., Robert Gordon, Esq., C. Sanders McNew, Esq., Weitz & Luxenberg, P.C., New York, NY, Liaison Counsel for Plaintiffs.
John S. Guttman, Esq., Daniel M. Krainin, Esq., Beveridge & Diamond, P.C., New York, NY, for Sunoco, Inc. and Sunoco, Inc (R & M).
Anthony A. Bongiorno, Esq., McDermott, Will & Emery LLP, New York, NY, for Exxon Mobil Corporation.
Peter John Sacripanti, Esq., James A. Pardo, Esq., Stephen J. Riccardulli, Esq., McDermott, Will & Emery LLP, New York, NY, Liaison Counsel for Defendants.

MEMORANDUM OPINION AND ORDER
SCHEINDLIN, District Judge.
Plaintiffs seek relief from contamination, or threatened contamination, of groundwater from various defendants' use of the gasoline additive methyl tertiary butyl ether ("MTBE") and/or tertiary butyl alcohol ("TBA"), a product that is formed by the natural degradation of MTBE in water. On February 16, 2006, Sunoco, Inc. and Sunoco, Inc. (R & M) ("Sunoco"), defendants in the above-captioned actions, brought a third-party action against the Town of Highlands for indemnity and contribution alleging that MTBE and/or TBA and other contaminants were released from the underground storage tanks at the Town of Highlands Highway Garage. During a conference on May 9, 2006, the Court was informed that Miller, Axline & Sawyer and the Sarcone Law Firm, ("the Firms"), attorneys for the Tonneson plaintiffs, had been retained by the Town of Highlands to undertake the defense of the third-party action.[1] At the conference, the Firms agreed to withdraw from their representation of the Town of Highlands. The Court then raised the issue of whether the Firms should be disqualified from representing *307 the Tonneson plaintiffs due to a risk of taint arising from the dual representation. I instructed the Firms to examine the propriety of continued representation of the Tonneson plaintiffs and make a submission to the Court, in camera, "explaining how far they went with the Town" in order to determine whether it was appropriate for the Firms to continue representing the Tonneson plaintiffs.[2]
Simultaneous representation of "differing interests" in litigation, such as representation of a plaintiff and third-party defendant, is prohibited unless "a disinterested lawyer would believe that the lawyer can competently represent the interest of each and if each consents to the representation after full disclosure of the implications of the simultaneous representation and the advantages and risks involved."[3] Where counsel has withdrawn or been disqualified from representing one party, continued representation of the remaining party is not warranted if "`an attorney's conduct tends to taint the underlying trial.'"[4]
Whether or not disqualification is warranted is subject to the court's discretion.[5] Given the "immediate adverse effect on the client by separating [it] from counsel of [its] choice, and that disqualification motions are often interposed for tactical reasons" the Court should be reluctant to grant a motion to disqualify counsel.[6] "[N]to every violation of a disciplinary rule will necessarily lead to disqualification."[7] Disqualification is "only warranted where `an attorney's conduct tends to taint the underlying trial.'"[8] This "risk of taint is encountered when an attorney who represents *308 one client in a suit against another client, [] might benefit a client in a lawsuit by using confidential information about an adverse party obtained through prior representation of that party."[9] As the Second Circuit has advised:
"when dealing with ethical principles, . . . we cannot paint with broad strokes. The lines are fine and must be so marked. Guideposts can be established when virgin ground is being explored, and the conclusion in a particular case can be reached only after painstaking analysis of the facts and precise application of precedent."[10]
Sunoco argues that the Firms must be disqualified from representing the Tonntson plaintiffs because the Firms had access to the confidences and secrets of both the Town and the Tonneson plaintiffs during the time the Firms represented both parties.[11] Sunoco claims that the Firms have gathered information in response to discovery requests for both the Town and the Tonneson plaintiffs and that the Firms held meetings with the Town and the Tonneson plaintiffs which the plaintiffs claim were privileged. Sunoco also claims that the Firms have breached their duty of undivided loyalty by not pursuing claims against the Town on behalf of the Tonneson plaintiffs.[12] The Basso plaintiffs also object to the Firms' continued representation of the Tonneson plaintiffs noting that as residents of the Town of Highlands they are concerned that their interests were compromised.[13]
The Firms conducted a review of their files and have submitted a letter and two affidavits explaining that "they can appropriately continue as counsel for the Tonneson plaintiffs."[14] In their affidavits, the Firms establish that they (1) have not received confidential or privileged information from the Town of Highlands, (2) have not given the Town any memos with legal advice or litigation strategy, (3) have met with the Town infrequently for the limited purpose of providing litigation updates, and (4) met with the Town regarding Sunoco's Third Party Complaint only for the purposes of informing the Town about the complaint and confirming representation. Both Firms submitted indexes chronicling their correspondence regarding the Town of Highlands. These submissions were provided in redacted form to defendants and plaintiffs in Basso, et al. v. Sunoco, Inc., et al.[15]
*309 The Firms have shown that there has been no taint associated with the representation of the Town as a third-party defendant. There are no facts from which it may be inferred that the Firms obtained confidential information from the Town or that privileged information was shared during the meetings with the Town. In fact, as the Firms assert, it appears that all the documents obtained from the Town were public records.[16]
Discovery responses from the Town of Highlands do not prove that the simultaneous representation would so taint the underlying, trial that the Firm must be disqualified from representation of the Tonneson plaintiffs. In the Town of Highlands' Responses and Objections to Sunoco's First Set of Interrogatories, the Town objected generally to the interrogatories based on attorney-client privilege. The Town also promised to produce all "nonprivileged documents from its files regarding the gasoline underground storage tank system at the former Town Garage."[17] This does not prove that specific confidential information was shared that might taint the underlying trial. The Firms do not deny that an attorney-client relationship existed between the Firms and the Town of Highlands. The question is whether the sparse communications exchanged during the time that the state and federal cases were on hold would taint the underlying trial. I find that they do not.
The decision not to name the Town of Highlands as a defendant did not arise from the breach of the Firms' duty of undivided loyalty to the Tonneson plaintiffs. As the Firms have shown, the decision was based on "sound hydrogeologic and factual considerations."[18] The Firms explain that they chose to sue Sunoco and Exxon Mobil Corporation rather than the Town because while the New York Department of Environmental Conservation ("NYDEC") required Sunoco and Mobil stations to treat private residential wells for remediation of petroleum contamination, it issued the Town a "no further action" letter after initially detecting petroleum contamination at the Town of Highlands Highway Garage.[19] The fact that the Basso plaintiffs now intend to file claims against the Town of Highlands does not undercut the reasoning behind the Firms' decision not to sue the Town.[20]
The Firms assert that they have zealously represented the Tonneson plaintiffs by preparing plaintiffs for depositions, appearing at depositions, and pursuing discovery for plaintiffs.[21] There is nothing to suggest that they will not continue to do so. Considering the "`strong public policy to allow persons to retain counsel of their choice'" and the need to avoid causing *310 "`severe prejudice to the client, who would have to secure new counsel to deal with somewhat complex litigation with the accompanying increased expense and loss of time'"[22] disqualification is not warranted.
SO ORDERED.
NOTES
[1] The Firms also represented the Town of Highlands, as a plaintiff in two related state cases, but those cases were dormant until March 2006. See Armstrong, et al. v. Sunoco, Inc., et at, No. 03-3717 (N.Y. Sup.Ct. Orange Cty.); Abreyava, et al. v. Sunoco, Inc., et al., No. 03-7403 (N.Y. Sup.Ct. Orange Cty.). Though both the federal and state cases were on hold during most of 2004 and 2005, in December 2005, this Court signed a stipulated discovery schedule allowing discovery to proceed in the Tonneson and Basso cases. See Case Management Order # 18. In March of 2006, Judge John McGuirk of the New York State Supreme Court also entered a discovery schedule for the state cases.
[2] 5/9/06 Transcript of Court Conference at 17.
[3] N.Y. Comp.Codes R. & Regs. tit. 22 § 1200.24 (2006). See also Hempstead Video, Inc. v. Village of Valley Stream, 409 F.3d 127, 133 (2d Cir.2005) ("In cases of concurrent representation, we have ruled it is prima facie improper for an attorney to simultaneously represent a client and another party with interests directly adverse to that client.") (quotations omitted).
[4] Hempstead Video, 409 F.3d at 133 (quoting Board of Ed. of City of New York v. Nyquist, 590 F.2d 1241, 1246 (2d Cir.1979)). See also Boyd v. Trent, 287 A.D.2d 475, 731 N.Y.S.2d 209 (2001) (attorney disqualified from representing minor passengers where attorney also represented vehicle owner, due to the possibility of an independent claim by the passenger against the owner); Wood v. Beacon Factors Corp., 137 A.D.2d 752, 524 N.Y.S.2d 831 (1988) (attorney disqualified from representing two defendants, shareholders of a close corporation, due to the possibility of crossclaims between them); Franklin High Income Trust v. APP Global, Ltd., No. 602567/02, 2004 WL 2963916, 799 N.Y.S.2d 160 (Table opinion) (2004) (plaintiffs' counsel disqualified from representing third party defendants where the possibility that counsel will be expected to press for the maximum recovery for plaintiffs at the same time as advocate for third party defendants who may be in favor of a lesser recovery if it included a release of the third party claims was a possible conflict that could compromise the attorney's ability to represent both parties).
[5] See Cresswell v. Sullivan & Cromwell, 922 F.2d 60, 72 (2d Cir.1990); Reilly v. Computer Assocs. Long-Term Disability Plan, 423 F.Supp.2d 5, 9 (E.D.N.Y.2006).
[6] Nyquist, 590 F.2d at 1246 ("[U]nless an attorney's conduct tends to taint the underlying trial, . . . courts should be quite hesitant to disqualify an attorney."). Accord Evans v. Artek Sys. Corp., 715 F.2d 788, 792 (2d Cir. 1983).
[7] Hempstead Video, 409 F.3d at 132.
[8] Id. (quoting Nyquist, 590 F.2d at 1246). Accord Drag Racing Techns., Inc. as D.R.T., Inc. v. Universal City Studios, Inc., No. 02 Civ. 0958, 2003 WL 1948798, at *3 (S.D.N.Y. Apr. 24, 2003) ("Disqualification is warranted only in situations where violations of the Canons of the Code of Professional Responsibility pose a significant risk of trial taint.") (quotations omitted).
[9] Glueck v. Jonathan Logan, Inc., 653 F.2d 746, 748 (2d Cir.1981) (a risk of taint "is encountered when an attorney represents one client in a suit against another client, in violation of Canon 5 [of the Code of Professional Responsibility] . . . or might benefit a client in a lawsuit by using confidential information about an adverse party obtained through prior representation of that party, in violation of Canon 4"). Accord Hempstead Video, 409 F.3d at 133 ("One recognized form of taint arises when an attorney places himself in a position where he could use a client's privileged information against that client.").
[10] Fund of Funds, Ltd. v. Arthur Andersen & Co., 567 F.2d 225, 227 (2d Cir.1977) (quoting United States v. Standard Oil Co., 136 F.Supp. 345, 367 (S.D.N.Y.1955)).
[11] Exxon Mobil Corporation ("Exxon") concurs in the letter submitted by Sunoco. See 6/1/06 Letter from Anthony A. Bongiorno, Counsel for Exxon, to the Court.
[12] See 6/8/06 Letter from John S. Guttman, Counsel for Sunoco, to the Court at 4-5.
[13] See 6/5/06 Letter from Stuart Goldberg, Counsel for Basso Plaintiffs, to the Court at 2.
[14] 5/30/06 Letter from the Firms to the Court at 4.
[15] The Basso plaintiffs' request to view the in camera submission made by the Firms to the Court is denied.
[16] See Affidavit of John A. Sarcone in Support of Miller, Axline & Sawyer and the Sarcone Law Firm's Submission for Continued Representation of Tonneson Plaintiffs ("Sarcone Aff.") ¶ 3; Affidavit of Michael D. Axline in Support of Miller, Axline & Sawyer and the Sarcone Law Firm's Submission for Continued Representation of Tonneson Plaintiffs ("Axline Aff.") ¶ 4.
[17] See Third-Party Defendant Town of Highlands' Responses and Objections to Third-Party Plaintiff Sunoco's First Set of Interrogatories, Ex. A to 6/1/06 Letter from Exxon to the Court.
[18] 5/30/06 Letter from the Firms to the Court at 4.
[19] See id. (the Firms do not claim that the "no further action" letter absolved the Town of liability, but merely that they had sound considerations for not naming the Town as a defendant).
[20] See 5/31/06 Letter from Stuart Goldberg, Counsel for Basso Plaintiffs, to the Court at 2.
[21] See Sarcone Aff. ¶ 8; Axline Aff. ¶ 8.
[22] Lamotte v. Beiter, No. 600770/06, slip op. at 10 (N.Y. Sup.Ct. N.Y. Cty. June 6, 2006) (quoting Macro Cash and Carry Corp. v. Berkman, 81 A.D.2d 783, 439 N.Y.S.2d 22 (1st Dept.1981)).