*217 OPINION OF THE COURT
Herbert Kramer, J.
This court is confronted with a motion to disqualify a law firm representing both a subsidiary corporation and the plaintiff who is prosecuting its parent. In this case of apparent first impression in this State, it is necessary for us to determine what standard to apply in deciding whether this representation violates the Code of Professional Responsibility Canons.
The Parsons Corporation has moved to disqualify the law firm of LeBoeuf, Lamb, Greene & MacRae, L. L. P. (LeBoeuf) from representing plaintiff, Brooklyn Navy Yard Cogeneration Partners, L.P. (BNYCP), in this suit against the Parsons Corporation, on the ground that LeBoeuf is currently representing a subsidiary of Parsons — the Ralph M. Parsons Company (RMP) — in Moscow with respect to the subsidiary’s dealings with the Russian Federation.
This court holds that disqualification under these circumstances will lie only if the nature of the law firm and its practice together with the type and scope of the legal work done for the subsidiary make it realistic and plausible to assume that confidential information was or would be acquired that would give the plaintiff an unfair advantage over the defendant in this litigation in violation of Canons 4 and 9. In so holding this court is rejecting, ab initio, the theory propounded by the defendants that the two corporations should be treated as one entity for conflicts purposes since no evidence has been submitted to demonstrate that the "[d]ominion [of the parent over the subsidiary is] so complete, [the] interference so obtrusive” as to rebut the presumption that they are separate and distinct legal entities. (American Psych Sys. v Options Ind. Practice Assn., 168 Misc 2d 582, 585 [Sup Ct, Westchester County 1996]; Berkey v Third Ave. Ry. Co., 244 NY 84 [1926].)[1]
Background
On November 1, 1994, defendant PMNC, a joint venture, entered into a turnkey agreement with Brooklyn Navy Yard *218 Cogeneration Partners, L.P., to construct a cogeneration facility in building 41 of the Brooklyn Navy Yard. By February of 1997, the turnkey agreement had apparently fallen apart and an action was commenced by Parsons in California.[2] Approximately two weeks after Parsons commenced the California action, BNYCP by its attorneys, LeBoeuf, commenced an action in New York.[3] On June 20, 1997, 15 days after receiving the amended complaint in this action, defendant moved for the disqualification of the LeBoeuf firm.
Discussion
The thorny question of attorney disqualification requires a response sensitive to each of the substantial interests implicated in the controversy. The client pressing for the disqualification, here defendant, is interested in having an attorney who is free of competing and compromising influences and loyalties. (Cinema 5 v Cinerama, Inc., 528 F2d 1384 [2d Cir 1976].) The client opposing disqualification, here plaintiff, is interested in proceeding with the counsel of his choice, selected presumably for his specialized knowledge, and is interested in avoiding the burden of having to familiarize a new attorney with the litigation.[4] (Solow v Grace & Co., 83 NY2d 303, 309 [1994].) The court is interested in avoiding the inevitable delay in litigation imposed by a last minute change in representation, while *219 maintaining the integrity of the trial. (Armstrong v McAlpin, 625 F2d 433, 444 [2d Cir 1980] [en banc], vacated on other grounds 449 US 1106; see, AMBAC Indem. Corp. v Bankers Trust Co., 145 Misc 2d 52, 56 [Sup Ct, NY County 1989].)
In attempting to deal fairly with these conflicting interests, Federal courts have "adopted a 'restrained approach’ to disqualification motions 'which calls for disqualification only upon a finding that the presence of a particular counsel will taint the trial by affecting his or her presentation of a case’ * * * There are two types of cases [recognized in the Second Circuit] as posing a risk that [the] trial will be tainted * * * [The first involves] representation of a former client and breach of Canon 4, caused by the attorney’s successive representation of a party with interests adverse to his former client. As a result, the attorney is in a position to use confidences gained in the prior representation to the detriment of his former client.” (Fisons Corp. v Atochem N. Am., 1990 WL 180551, 2-3 [SD NY, Nov. 14, 1990, Cannella, J.].)[5]
While a breach of Canon 4 is usually encountered in the context of a "prior representation” case, and the case at bar is not a "prior representation” case, but rather is more akin to a "sister corporation” case, the application of an appropriately modified "substantial relationship” test is appropriate and useful to the resolution of the issue at bar. (Accord, Pennwalt Corp. v Plough, Inc., 85 FRD 264, 270 [D Del 1980].) " '[T]he determination of whether there is a substantial relationship turns on the possibility, or appearance thereof, that confidential information might have been given to the attorney in relation to the * * * matter in which disqualification is sought. The rule does not necessarily involve any inquiry into the imponderables involved in the degree of relationship between the two matters but instead involves a realistic appraisal of the possibility that confidences had been disclosed in the one matter which will be harmful to the client in the other. The effect of the Canons is necessarily to restrict the inquiry to the possibility of disclosure’ ”. (Supra, at 270.)
In deciding the question of whether the "possibility of disclosure” exists, two factors are relevant: (1) The nature of *220 the law firm and. the informal or formal character of its practice insofar as it sheds light upon whether confidential information about the client would have been shared among the members of the firm. (Solow v Grace & Co., supra, 83 NY2d, at 311 [comparing, Cardinale v Golinello, 43 NY2d 288, with Silver Chrysler Plymouth v Chrysler Motors Corp., 518 F2d 751].) (2) The type of legal work done for the client insofar as it may have put the firm in the position of acquiring confidential information that could be used in an adversarial manner. (Matter of Reichenbaum v Reichenbaum & Silberstein, 162 AD2d 599 [2d Dept 1990].)
Here, the legal work done for defendant’s subsidiary was of a highly specialized nature and had absolutely nothing in common with the subject matter of the present controversy. Moreover, in this highly structured and formal law firm, the work for the subsidiary was accomplished by a geographically isolated member of the firm. These factors render nugatory the risk that confidential information was or would be acquired with respect to the defendant parent corporation that would be used to its detriment in the instant litigation.[6] Indeed, Gary L. Stone, Esq., who headed the common legal department shared *221 by all of Parsons’ subsidiary organizations, did not become aware of the purported conflict until February 20, 1997, two weeks after PMNC commenced the California litigation in this case, three years after LeBoeuf began its representation of RMP and three years after the turnkey agreement between BNYCP and PMNC that is the subject matter of this suit was executed.
Under the circumstances that obtain in this case, the immediate, adverse effect upon BNYCP in the disqualification of its counsel and upon the interests of this court in seeing the prompt resolution of the controversies before it when balanced against the remote, contingent and speculative possibility of the disclosure of confidential information mandates the denial of the defendant’s motion to disqualify plaintiffs counsel.
Defendant’s motion to disqualify plaintiffs counsel is denied. The interim stays are hereby vacated.

. According to the undisputed evidence, RMP is a very large corporation that employs 3,400 people and had sales in 1995 of approximately $545,000,000, a tangible net worth $281,943,000 and a working capital of $46,421,000. There has been no evidence submitted to demonstrate the parent’s control or dominion over the day-to-day activities, or for that matter, the long range plans of the subsidiary, other than the fact that they share common legal and accounting departments and have some officers in common.

. The California action has been stayed pending appellate review of the disqualification motion made there on February 4, 1997. The Parsons Corporation and PMNC commenced an action in California against BNYCP and its general partners, Mission Energy of New York, Inc. (Mission) and B-41 Associates, L.P., for $136,800,000 for breach of the agreement and for work, labor services and materials and for declaratory relief with respect to a guaranty executed by Parsons in connection with the turnkey agreement. Parsons sought to disqualify LeBoeuf in the California action. The lower court disqualified the law firm. On appeal the lower court was directed to set aside its order and the action was stayed pending review of the lower court’s determination.

. The amended complaint served in the New York action on June 5, 1997 together with five notices of discovery and inspection sought offsets of $43,000,000 against any amounts it owed to Parsons under the turnkey agreement; $13,000,000 in damages for breach of the agreement; a declaration that PMNC forfeited its right to assert claims against BNYCP; and recovery of $13,139,889.14 under Parsons’ guaranty.

. The notices of discovery and inspection run from 27 to 29 pages in length and contain 190 to 200 paragraphs. Each has a nine-page single-spaced list of files attached as an exhibit. On July 18,1997 this court extended the stay granted in the order to show cause dated June 20, 1997 until such time as this motion is decided except that (1) the defendant will be permitted to make a motion to dismiss or stay this action and plaintiff may respond; and (2) either party will be permitted to move for further modification of the stay.

. The second situation which poses a risk of taint to the trial is not applicableto the facts at bar, as it involves "concurrent representation and breach of Canon 5, caused by an attorney’s attempt to represent a party to a lawsuit while simul- taneously representing the opposing party in another matter. The danger in this situation is that the dual representation undermines the attorney’s vigor in pursuing pursuing the interests of one of his current clients.” (Fisons Corp. v Atochem N. Am., supra, at 3.)

. The representation of the Ralph M. Parsons Corp. by LeBoeuf began in 1994 when Brian L. Zimbler, a partner in the firm of Graham & James where he represented RMP, joined LeBoeuf residing in its Moscow office.
The following excerpts from Mr. Zimbler’s affidavit in opposition to the motion for disqualification, which have not been disputed by defendant, describe his services to RMP "In 1994 and early 1995 LeBoeuf advised The Ralph M. Parsons Company concerning the registration of an accredited representation office for The Ralph M. Parsons Company of ('RMP-Delaware’), a wholly-owned subsidiary of The Ralph M. Parsons Company. This work was completed in approximately March 1995, when RMP-Delaware became registered in the Russian Federation. From approximately September 1994 through mid-1995, LeBoeuf advised The Ralph M. Parsons Company on Russian law matters relating to The Ralph M. Parsons Company’s work as general contractor for the United States Agency for International Development ('USAID’) in overseeing the building of housing for Russian military officers returning from overseas postings * * * In 1995 and 1996 LeBoeuf advised The Ralph M. Parsons Company in connection with a dispute concerning claims arising out of a subcontract related to the USAID program * * * LeBoeuf registered a branch office for an affiliate of The Ralph M. Parsons Company known as Parsons International Corporation, L.L.C. ('PICL’) * * * In the fall of 1996 LeBoeuf advised PICL on the process of applying for design and construction licensing in the Russian Federation * * * From time to time LeBoeuf was periodically asked to advise on, or participate [in] discussions concerning, other matter[s] of Russian law, including tax questions and general issues regarding 'doing business in Russia.’ Since early January 1997 LeBoeuf has advised RMP-Delaware concerning a dispute with a Russian subcontractor under the USAID program * * * This is the only matter that is being currently handled for The Ralph M. Parsons Company.”