**JPMORGAN CHASE BANK, for and on Behalf of MAHONIA LIMITED AND MAHONIA NATURAL GAS LIMITED, Plaintiff,**

v.

**LIBERTY MUTUAL INSURANCE COMPANY, Travelers Casualty and Surety Company, St. Paul Fire and Marine Insurance Company, Continental Casualty Company, National Fire Insurance Company of Hartford, Fireman's Fund Insurance Company, Safeco Insurance Company of America, the Travelers Indemnity Company, Federal Insurance Company, Hartford Fire Insurance Company, Lumbermens Mutual Casualty Company, Defendants.**

No. 01 CIV. 11523(JSR).

United States District Court,
S.D. New York.

Jan. 28, 2002.

Frank Mosley, Guy Miller Struve, Davis Polk & Wardwell, New York City, for Plaintiff.

Eva H. Posman, New York City, for Liberty Mutual Insurance Company.

Alan Levine, Kronish Lieb Weiner & Hellman LLP, New York City, for Travelers Casualty and Surety Company, The Travelers Indemnity Company, St. Pauls Fire and Marine Insurance Company

Stewart D. Aaron, Dorsey & Whitney, L.L.P., Armen Shahinian, Scott D. Baron, Wolff & Samson, New York City, for Continental Casualty Company and National Fire Insurance Company of Hartford.

Vincent J. Zichello, Zichello & McIntyre, L.L.P., New York City, Local Counsel and Darren B. Watts, Benjamin Schwartz, George Ellis, Nadine McSpadden, Altheimer & Gray, Chicago, IL, for Fireman's Fund Insurance Company.

Mark S. Gamell, Torre, Lentz, Gamell, Gary & Rittmaster, LLP, Jericho, NY, for Safeco Insurance Company of America, Hartford Fire Insurance Company and Lumbermens Mutual Casualty Company.

Gary L. Leshko, Thomas G. Wilkinson, Esq. (admitted pro hac vice per order dated January 18, 2002), F. Warren Jacoby, Esq. (admitted pro hac vice per order dated January 18, 2002), Stephen Cozen, Esq. (admitted pro hac vice per order dated January 28, 2002), Cozen & O'Connor, New York City, for Federal Insurance Co.

## OPINION AND ORDER

RAKOFF, District Judge.

Even in an age of convenience, for a law firm to bring a multi-million dollar claim on behalf of one corporate client against the primary subsidiary of another of that law firm's corporate clients might be expected to raise some eyebrows. In this case, it also requires the law firm's disqualification.

The law firm in question is the well regarded New York firm of Davis Polk & Wardwell ("Davis Polk"). The party seeking Davis Polk's disqualification is Federal Insurance Company ("Federal"), a large insurance company and one of the defendants here. In 1967, Davis Polk, acting as counsel for Federal, helped organize and incorporate The Chubb Corporation ("Chubb") a holding company, the primary holding of which was Federal. Declaration of Joanne L. Bober, sworn to January 7, 2002 ("Bober Dec.") at ¶¶ 2, 8. Since that time Davis Polk has represented Chubb in a wide variety of matters, including, *inter alia*, capital market transactions, securities filings, bank financings, and ERISA work; and Davis Polk's representation of Chubb continues to the present. Affidavit of Dennis S. Hersch, sworn to January 17, 2002 ("Hersch Aff.") at ¶ 3; Bober Dec. ¶¶ 8, 9. In addition, Davis Polk has periodically represented Federal on discrete projects, though none since 1996. Hersch Aff. ¶ 5.

Although Chubb and Federal have resisted claims that they are simply "alter egos" of one another, *see Levy v. Chubb Corp.* 2001 WL 204793, *3 (N.D.Ill.); *Electrographics Int'l Corp. v. Federal Ins. Co.*, 1998 WL 646831, *3 (E.D.Pa.); *Filenet Corp. v. Chubb Corp.*, 324 N.J.Super. 419, 424–25, 735 A.2d 1170, 1172 (1999), the relationship is extremely close and interdependent, both financially and in terms of direction. Financially, Federal accounts for over 95% of Chubb's total revenue and over 90% of Chubb's total net income. Declaration of Henry B. Schram, sworn to January 7, 2002 ("Schram Dec.") at ¶ 3; transcript of hearing and oral argument, January 23, 2002 ("tr.") at 18. In terms of direction, Chubb and Federal operate from the same New Jersey headquarters and, since 1967, have shared the same Board of Directors. Bober Dec. ¶¶ 5, 6. They also share certain common officers; of particular relevance here, the General Counsel (and a Senior Vice President) of Chubb, Joanne L. Bober, is also the General Counsel (and a Senior Vice President) of Federal. Bober Dec. ¶ 1.

In October 2001, Davis Polk was retained by JPMorgan Chase Bank ("JPM Chase"), the plaintiff here, to represent that bank in connection with matters arising from the burgeoning difficulties of the Enron Corporation ("Enron") and its affiliates. By late November, Davis Polk, notwithstanding its representation of Chubb (and without Chubb's knowledge or consent), had begun examining, *inter alia*, the obligation to JPM Chase (acting for and on behalf of Mahonia Limited and Mahonia Natural Gas Limited, collectively "Mahonia") of Chubb's primary subsidiary, Federal, on no less than $183 million in surety bonds guaranteeing Enron obligations. Affidavit of Frank S. Moseley, sworn to January 18, 2002 ("Moseley Aff.") at ¶¶ 2–3.

Davis Polk did not seek Chubb's or Federal's consent to undertake this inquiry. When, on December 7, 2001, Ms. Bober learned of the representation, she telephonically informed Frank S. Moseley, the Davis Polk partner working on the matter, that she thought that Davis Polk needed Chubb's consent to undertake representation adverse to Federal and that, at least until she learned more of the relationship between JPM Chase and Mahonia, she would not waive the conflict. Moseley Aff. ¶¶ 12—14. Davis Polk nonetheless continued the representation and began preparing the instant lawsuit against Federal.

Meanwhile, as part of its ongoing representation of Chubb, Davis Polk was also preparing an SEC Form S–3, a disclosure form related to a so-called "shelf registration." On December 11, 2001, Davis Polk filed the S–3. Under the heading "Recent Developments" the S–3 stated that "*Chubb* has obligations under outstanding surety bonds relating to Enron affiliates [of] approximately $220 million", Bober Dec. Ex. C, Form S–3 Registration Statement Under the Securities Act of 1933, The Chubb Corporation, filed on December 11, 2001, at 4 (emphasis added). Although the bulk of this obligation consisted of the very surety bonds on which Chubb's subsidiary, Federal, allegedly was obligated to Mahonia, Davis Polk did not reveal to Chubb that it was preparing, on behalf of Davis Polk's other client, JPM Chase, a lawsuit demanding payment of $183 million from Federal. Rather, without Chubb's prior knowledge or consent, Davis Polk, acting for JPM Chase, filed the instant lawsuit on the very same day (Dec. 11) that, acting for Chubb, it filed the S–3.

The next day, December 12, 2001, Ms. Bober wrote to Mr. Moseley, demanding that Davis Polk either withdraw as counsel for JPM Chase or provide legal justification for its dual representation. Moseley Aff., Ex. B. Moseley responded on December 14, 2001, contending that because Davis Polk only represented Chubb and not Federal, New York law did not preclude its representating JPM Chase against Federal. Moseley Aff., Ex. C. In turn, Gary L. Leshko, the outside counsel hired to represent Federal in the instant lawsuit, wrote to Davis Polk on January 2, 2002, advising it that Federal intended to file a motion to disqualify Davis Polk in this action. On January 7, 2002, Federal filed such a motion. Following review of papers from both sides, the Court heard oral argument (and conducted a brief evidentiary inquiry) on January 23, 2002. *See* tr.

The parties agree that the issue of disqualification is essentially governed by New York law. *See* Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, Local Civil Rules 1.3(a)(6); 1.5(b)(5)(adopting New York law for this purpose). In particular, DR 5–105(B) of the New York Code of Professional Responsibility, 22 N.Y.C.R.R. § 1200.24, provides in pertinent part that "A lawyer shall not continue multiple employment… if it would be likely to involve the lawyer in representing differing interests." Even if one views Davis Polk's current representations as only involving JPM Chase and Chubb, one need look no further than the aforementioned S–3 to see how Davis Polk has already entangled itself in conflicts of interest; for while it is clearly to JPM Chase's interest that Chubb has already acknowledged that the Federal security bonds are obligations of Chubb, it is doubtful that Chubb would have approved such wording, drafted with the aid of Davis Polk, if it had known that Davis Polk would simultaneously bring suit on these bonds against Federal.

Furthermore, it is wholly artificial to separate Chubb and Federal for purposes of analyzing Davis Polk's responsibilitoes in this context. Just from the fact that Federal accounts for more than 90% of Chubb's business and that Chubb and Federal share identical corporate headquarters, an identical board, and an identical general counsel, *see* Bober Aff. ¶¶ 1, 5, 6, it is obvious that the two share a wealth of common interests adversely impacted by the lawsuit in question. *Cf. Hartford Accident and Indemnity Co. v. RJR Nabisco, Inc.*, 721 F.Supp. 534 (S.D.N.Y. 1989). Thus, this case is patently unlike *Brooklyn Navy Yard Congregation Partners L.P. v. PMNC*, 174 Misc.2d 216, 663 N.Y.S.2d 499 (1997), *aff'd*, 254 A.D.2d 447, 679 N.Y.S.2d 312 (2d Dep't 1998)—the case principally relied upon by Davis Polk to support their argument that representation of Chubb is not here tantamount to representation of Federal—for in that case, the court held that the fact that a law firm advised a defendant's remote subsidiary based in Moscow on Russian law matters that had "absolutely nothing in common with the subject matter" of the controversy did not preclude the same firm from suing the parent. *Id.* at 220, 663 N.Y.S.2d 499.

Given the practical realities of the situation, then, the doctrine of concurrent representation applies and the burden of avoiding disqualification then shifts to Davis Polk to "show, at the very least, that there will be no actual or apparent conflict in loyalties or diminution in the vigor of his representation." *Cinema 5 Ltd. v. Cinerama, Inc.* 528 F.2d 1384, 1387 (2d Cir.1976). Davis Polk would minimize and shift back this burden by arguing that, in light of subsequent Second Circuit cases, disqualification of Davis Polk is not required unless Federal, the movant, can show that Davis Polk's representation of JPM Chase would adversely affect Federal at trial.

But in all of the circuit cases relied on by plaintiff for this proposition, the underlying conflict of interest was *not* based on concurrent, ongoing representation of two clients. *See Armstrong v. McAlpin*, 625 F.2d 433 (2d Cir.1980), *overruled on other grounds*, 449 U.S. 1106, 101 S.Ct. 911, 66 L.Ed.2d 835 (1981) (alleged conflict arose from use by plaintiff of a law firm whose members included a former SEC assistant director who had been involved in SEC's action against movant defendant); *Board of Educ. v. Nyquist*, 590 F.2d 1241 (2d Cir.1979) (alleged conflict arose from lawyer for an association representing one set of members of a union that provided financial support for that association in a dispute against another set of members of the union); *Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746 (2d Cir.1981) (alleged conflict arose from a law firm's representing a client in a suit against a corporation with a division that is a member of an association that the plaintiff's firm also represented).

By contrast, where, as here, there is in effect concurrent representation of two adverse clients, the potential for conflict is hardly limited to the trial context but can infect, actually or potentially, a broad spectrum of activities, as the aforementioned S–3 demonstrates. Moreover, in contrast to most (if not all) of the "trial taint" cases, the Court here confronts the issue of disqualification near the very outset of the litigation when, on the one hand, determining the potential for "trial taint" is difficult, and where, on the other hand, the prejudice to plaintiff in having to substitute new counsel is relatively modest.

Most fundamentally, Davis Polk's attempt to apply to the instant situation lesser standards of disqualification drawn from other contexts overlooks both the stark realities of the instant situation and the interests it implicates. For most practical purposes, including those materially

affected by this lawsuit, Chubb and Federal, are inextricably intertwined, and for most practical purposes Davis Polk functions as Chubb's ongoing outside counsel. To permit Davis Polk in such circumstances to prosecute a major lawsuit against Chubb's primary subsidiary, Federal, would be not only to undercut a lawyer's duty of loyalty to his client and cast considerable doubt on the independence of his professional judgment, *see* Canon 5 and EC 5–14, but also to provide support for the public's increasingly cynical view of the legal profession. *See* Canon 9 and EC 9–1.

For the forgoing reasons, Davis Polk is disqualified from representing JPM Chase against Federal in this matter. Since there is no good reason to sever Federal from the other defendants, the effect is to remove Davis Polk from the case altogether. The Court will, however, stay all proceedings in this case for two weeks, to enable plaintiff to obtain new counsel and/or for plaintiff to seek a stay of this Order if it wishes to appeal.

SO ORDERED.