**DISCOTRADE LTD., Plaintiff,**

v.

**WYETH–AYERST INTERNATIONAL, INC., Defendant.**

**No. 02 CIV.3292 NRB.**

United States District Court,
S.D. New York.

May 7, 2002.

Richard F. Albert, Dorsey & Whitney LLP, New York City, Alan I. Baron, Dorsey & Whitney LLP, Washington, DC, Counsel for Plaintiff.

Bruce S. Kaplan, Friedman, Kaplan, Seiler & Adelman LLP, New York City, for Defendant.

## MEMORANDUM AND ORDER

BUCHWALD, District Judge.

Plaintiff Discotrade Ltd. ("Discotrade") brings this suit against defendant Wyeth–Ayerst International, Inc. ("WAII") for fraud, breach of contract, and breach of the implied covenant of good faith and fair dealing. On April 30, 2002, the same day it filed its Complaint, Discotrade moved by order to show cause for the entry of a temporary restraining order and preliminary injunction[1] against WAII seeking to enjoin the latter from terminating a distributorship agreement on the following day, May 1, 2002. A conference was held before the Court on April 30, 2002, in order to address Discotrade's motion. At this conference, WAII moved to dismiss Discotrade's counsel, Dorsey & Whitney LLP ("Dorsey & Whitney"), on the ground that their representation of WAII created a conflict of interest due to the fact that Dorsey & Whitney currently represents Wyeth Research, a company that is related to WAII. For the reasons that follow, WAII's motion is granted and Dorsey &

---

1. Pursuant to Fed.R.Civ.P. 65.

Whitney is hereby disqualified from representing Discotrade in this matter.

## BACKGROUND

The conflict alleged arises from Dorsey & Whitney's ongoing representation of Wyeth Pharmaceuticals Inc. ("Pharmaceuticals"). Accordingly, a summary of the corporate relationship between WAII and Pharmaceuticals is essential to our analysis. *See NCK Org., Ltd. v. Bregman,* 542 F.2d 128, 131 (2d Cir.1976).

Wyeth, Inc. ("Wyeth") wholly owns AHP Subsidiary Holding Corp. ("AHP") which, in turn, wholly owns, *inter alia,* WAII and Pharmaceuticals, both New York corporations. Def.'s Mem. at 4. Wyeth Research ("Research") is an operating unit or division of Pharmaceuticals. *Id.;* Affidavit of M. Andrea Ryan[2] ("Ryan Aff.") ¶ 12. All of the directors of Pharmaceuticals are also directors of WAII, and the two corporations share several common officers, most notably Bernard J. Poussot, who serves as President to both corporations. Ryan Aff. ¶¶ 13–14. According to WAII, there is "substantial integration of [ ] Pharmaceuticals and [WAII]'s day-to-day activities," such as the use of the same computer network, e-mail system, travel department, and health benefit plan. *Id.* ¶ 15. Furthermore, WAII's and Pharmaceuticals's financial reports are consolidated and Wyeth's Chief Financial Officer serves as CFO to both corporations. *Id.*

Finally, WAII and Pharmaceuticals are both served by Wyeth's "in-house" law department, and virtually all legal correspondence relating to WAII and Pharmaceuticals is upon Wyeth letterhead. *Id.* ¶ 16.

Since October 2001, Dorsey & Whitney has continuously represented Research in connection with certain patent applications. Ryan Aff. ¶ 3; Declaration of Raymond Van Dyke[3] ("Van Dyke Decl.") ¶¶ 2–5. Dorsey & Whitney sent a retainer letter to Ms. Ryan on January 16, 2002, setting forth the terms of its representation of Research.[4] Ryan Aff. Ex. C. This letter, which was apparently never signed by Ms. Ryan, states, *inter alia,* that "while [Dorsey & Whitney] represents a client [it] will not undertake litigation in which the client is a directly adverse party." *Id.* In its capacity as counsel to Research, Dorsey & Whitney has prepared two patent applications and, as recently as April 29, 2002, presented an extensive written opinion regarding an inventorship study. Ryan Aff. ¶ 3; *id.* Ex. B. Until it undertook to represent Discotrade, Ms. Ryan "considered Dorsey & Whitney to have become an integral member of Wyeth's Law Department outside counsel network, and planned to rely upon Dorsey & Whitney to handle additional legal matters in the future." Ryan Aff. ¶ 3.

2. Ms. Ryan is Assistant General Counsel–Patents of Wyeth, Assistant Secretary of Wyeth, and a Vice President of Research. Ryan Aff. ¶ 2.

3. Mr. Van Dyke is a member of Dorsey & Whitney who represents Research. Van Dyke Decl. ¶¶ 2–6.

4. While Mr. Van Dyke stated that he "did not send a retainer letter to Ms. Ryan until April 10, 2002," Van Dyke Decl. ¶ 13, WAII has produced a copy of the January 16 letter that appears to be authentic. Ryan Aff. Ex. C. The

letterhead appears to be Mr. Van Dyke's personalized Dorsey & Whitney letterhead and appears to bear the same signature as the April 10 letter. *Compare id. with* Van Dyke Decl. Ex. B. Furthermore, the January 16 letter opens by stating, "Thank you for asking Dorsey & Whitney LLP to represent ...," while the April 10 letter opens by stating, "Thank you *again* for asking Dorsey & Whitney LLP to represent ..." *Compare* Ryan Aff. Ex. C *with* Van Dyke Decl. Ex. B (emphasis supplied).

On or about April 8, 2002, Mr. Van Dyke telephoned Ms. Ryan, informing her that Dorsey & Whitney was "considering taking on a potential litigation against a Wyeth company." Van Dyke Decl. ¶ 7. According to Mr. Van Dyke, Ms. Ryan "indicated that these situations happen all the time in big law firms, and that there would be no problem with the waiver." *Id.* Ms. Ryan, in no uncertain terms, denies ever making such a statement. Ryan Aff. ¶ 6. Mr. Van Dyke further claims that on or about April 18, 2002, he briefly spoke with Ms. Ryan at an American Intellectual Property Law Association meeting, at which time he expressed his appreciation for her "understanding and willingness to help regarding the possible conflict."[5] Van Dyke Decl. ¶ 8.

On April 26, 2002, Mr. Van Dyke sent a letter to Ms. Ryan stating, in pertinent part, "This waiver request is to confirm that Wyeth, and its affiliates, has agreed that [Dorsey & Whitney] is not precluded by conflicts of interest from representing Discotrade in this matter." Van Dyke Decl. Ex. A; Ryan Aff. Ex. E.[6] After consulting with her colleagues, Ms. Ryan faxed a brief letter on April 30, 2002, to Mr. Van Dyke stating, "I have reviewed the [instant] matter and your letter dated April 26, 2002 seeking a waiver. I am not able to waive the conflict." Ryan Aff. Ex. G. The present action was filed later that day.

**5.** Neither WAII nor Ms. Ryan address Mr. Van Dyke's assertion regarding the April 18 meeting. WAII does state in general terms, however, that "[a]t no time did [Ms. Ryan] consent to the conflict, or waive it." Def.'s Mem. at 3.

**6.** The "date stamp" on the copy received by Ms. Ryan indicates that she received the April 26 letter on April 29, 2002.

## DISCUSSION

An attorney owes his client a duty of "undivided loyalty." *Cinema 5 Ltd. v. Cinerama, Inc.,* 528 F.2d 1384, 1386 (2d Cir.1976). Thus, the Second Circuit has instructed us that it is prima facie improper for lawyers to take on a representation that is directly adverse to a current client. *Id.* at 1387 (citing *In the Matter of Kelly,* 23 N.Y.2d 368, 376, 296 N.Y.S.2d 937, 244 N.E.2d 456 (1968)). Accordingly, an attorney seeking to represent a party adverse to his client bears the burden of demonstrating "at the very least, that there will be no actual or apparent conflict in loyalties or diminution in the vigor of his representation." *Id.* If he fails to make such a showing, disqualification is properly granted. *Board of Educ. of N.Y. v. Nyquist,* 590 F.2d 1241, 1246 (2d Cir. 1979). With respect to the matter presently before the Court, we must first decide whether WAII is, for purposes of this analysis, a current client of Dorsey & Whitney. If so, we must next determine whether Dorsey & Whitney has borne the burden *Cinema 5* places upon it. For the reasons that follow, we answer the first question in the affirmative and the second question in the negative.

We find that WAII is a "current client" of Dorsey & Whitney because the corporate relationship between WAII and Pharmaceuticals[7] is so close as to deem them a single entity for conflict of interest purposes.[8] WAII and Pharmaceuticals are

**7.** Dorsey & Whitney apparently represents Research, which is a division of Pharmaceuticals. Since a division of a corporation does not have separate legal status, the representation is deemed to be of Pharmaceuticals. *See People of P.R. v. Russell & Co.,* 288 U.S. 476, 480, 53 S.Ct. 447, 77 L.Ed. 903 (1933).

**8.** We note that the instant inquiry is not nearly as rigorous as an "alter ego" or "piercing the corporate veil" analysis. *See JPMorgan*

corporate subsidiaries of a single corporate parent, AHP, which is, in turn, a wholly-owned subsidiary of Wyeth. WAII and Pharmaceuticals share the same board of directors as well as several senior officers, including their President, Mr. Poussot. The two corporations also interact intimately, for example by using the same computer network, e-mail system, travel department, and health benefit plan. In short, WAII and Pharmaceuticals do not view each other as strangers, but more like members of the Wyeth family. Our conclusion is reinforced by the practical aspects of their relationship, including their common "Wyeth" letterhead, *see* Ryan Aff. Ex. G, common "Wyeth" business cards, *see id.* Ex. A, and common "Wyeth" e-mail addresses, *see id.* Ex. H. WAII has met their burden of demonstrating that its relationship with Pharmaceuticals is so close that a conflict exists.

■ Discotrade argues that, even if a conflict exists, we should give effect to the oral waiver it claims it was granted by Ms. Ryan. Pl.'s Mem. at 4 ("Dorsey & Whitney was wholly justified in relying upon the oral consent given by Ms. Ryan"). We disagree. First, Ms. Ryan denies ever granting such an oral waiver to Dorsey & Whitney. Ryan Aff. ¶ 6. Second, it is clear from the documentary record that Dorsey & Whitney knew it had not secured an effective waiver before filing this lawsuit. Finally, even if Ms. Ryan had made such a statement, she (and Wyeth in general) had the power to withdraw the waiver after consulting with her colleagues, at least be-

fore Dorsey & Whitney filed a complaint on behalf of Discotrade.[9] Accordingly, we find that Pharmaceuticals did not waive the instant conflict.

Therefore, Dorsey & Whitney's representation of Discotrade in this matter is prima facie improper, and Discotrade bears the burden of showing that "there will be no actual or apparent conflict in loyalties or diminution in the vigor of [its] representation." *Cinema 5,* 528 F.2d at 1387. While Discotrade offers several arguments in an attempt to avoid disqualification, it has not met its burden.

Discotrade first asserts that "WAII was, at best, a 'vicarious' client of Dorsey & Whitney" as that term is used in *Glueck v. Jonathan Logan, Inc.,* 653 F.2d 746, 749 (2d Cir.1981). Pl.'s Mem. at 5–6. In *Glueck,* a former employee sued his employer for breach of contract. 653 F.2d at 748. The employer promptly moved to dismiss plaintiff's law firm on the ground that it had a conflict of interest arising out its representation of a not-for-profit trade association of which the defendant employer was a member. *Id.* The disqualification motion was denied. *Glueck* however, was a fact-specific opinion that is distinguishable from the present case. That case held only that the strict standards of *Cinema 5* need not "inevitably be invoked whenever a law firm brings suit against a member of an association that the firm represents." [10] *Id.* at 749. Here, by contrast, plaintiff's counsel represents a sister

*Chase Bank v. Liberty Mut. Ins. Co.,* 189 F.Supp.2d 20, 21 (S.D.N.Y.2002).

**9.** Ms. Ryan states that she transmitted a letter to Mr. Van Dyke via fax and Federal Express "[e]arly on the morning of April 30, 2002." Ryan Aff. ¶¶ 9–10. Ms. Ryan has represented that she sent this letter before 10:22 a.m. *Id.* ¶¶ 10–11, Ex. H. According to the "time stamp" on the Complaint, Dorsey & Whitney

filed the instant litigation on behalf of Discotrade at 2:32 p.m. on that date.

**10.** The *Glueck* Court offered an example to clarify its holding: "A law firm that represents the American Bar Association need not decline to represent a client injured by an automobile driven by a member of the ABA." 653 F.2d at 749.

corporation of the defendant. Notably, *Glueck* limited its holding by stating that the *Cinema 5* analysis "is properly imposed when a lawyer undertakes to represent two adverse parties, both of which are his clients in the traditional sense," as opposed to the "vicarious" sense stemming from membership in an association. *Id.* We find that, for present purposes, WAII was a traditional client of Dorsey & Whitney and that the *Glueck* exception to *Cinema 5* is inapplicable to this case.

Discotrade next argues that, because the subject matter of Dorsey & Whitney's representation of Pharmaceuticals is "wholly unrelated to the subject of the instant lawsuit," disqualification is improper. Pl.'s Mem. at 7–8. This "substantial relationship" test, however, has been expressly rejected with respect to conflicts among current clients, and we decline to entertain it here. *Cinema 5*, 528 F.2d at 1387. Where the representation is ongoing, "the attorney must be prepared to show, at the very least, that there will be no actual or apparent conflict in loyalties or diminution in the vigor of his representation." *Id.* Dorsey & Whitney has failed to meet this "heavy burden." *Id.*

Finally, Discotrade argues that this case is similar to *Brooklyn Navy Yard Congre-*

*gation Partners L.P. v. PMNC*, 174 Misc.2d 216, 663 N.Y.S.2d 499 (N.Y.Sup. Ct.1997), *aff'd*, 254 A.D.2d 447, 679 N.Y.S.2d 312 (2d Dep't 1998), which refused to disqualify a law firm because it was not realistic or plausible that "confidential information was or would be acquired" due to the adverse representation. *Id.* at 500. *Brooklyn Navy Yard*, however, is distinguishable. In that case, there was apparently no significant relationship between the two corporate affiliates. Here, by contrast, WAII and Pharmaceuticals overlap and interact in the various ways enumerated above. Accordingly, this case is closer to *JPMorgan Chase*, where the two sister corporations shared "identical corporate headquarters, an identical board, and an identical general counsel," than *Brooklyn Navy Yard*. *JPMorgan Chase*, 189 F.Supp.2d at 23 (distinguishing *Brooklyn Navy Yard* on this basis). In sum, Discotrade has failed to sustain its burden.[11]

## CONCLUSION

As elaborated above, we find that Dorsey & Whitney suffers from a conflict of interest by representing Discotrade in this action because it presently represents a close corporate affiliate of WAII, Pharma-

---

**11.** Finally, we acknowledge that the Second Circuit has "adopt[ed] a restrained approach [to disqualification motions] that focuses primarily on preserving the integrity of the trial process." *Armstrong v. McAlpin*, 625 F.2d 433, 444 (2d Cir.1980) (en banc), *vacated on other grounds*, 449 U.S. 1106, 101 S.Ct. 911, 66 L.Ed.2d 835 (1981); *see Nyquist*, 590 F.2d at 1246; *United States Football League v. National Football League*, 605 F.Supp. 1448, 1452 (S.D.N.Y.1985). The Circuit has adopted this restrained approach, however, primarily because "disqualification motions are often interposed for tactical reasons [and] even when made in the best of faith, such motions inevitably cause delay." *Nyquist*, 590 F.2d at 1246 (internal citations omitted); *see Allegaert v. Perot*, 565 F.2d 246, 251 (2d Cir.1977) (expressing "concern ... that disqualification motions have become common tools of the litigation process, being used ... for purely strategic purposes") (internal citation and quotation marks omitted) (alteration in original). These concerns, however, are inapposite to the case at bar in that Dorsey & Whitney was aware that Pharmaceuticals believed there was a conflict (and refused to waive it) *before a complaint was filed*. Indeed, in an e-mail from Mr. Van Dyke to Ms. Ryan dated April 30, 2002, he admits that he "had a fear that there would be a problem" with Dorsey & Whitney's representation of Discotrade against WAII. Ryan Aff. Ex. H. Accordingly, even under the "restrained approach," we find it entirely proper to disqualify Dorsey & Whitney from this action.

ceuticals. As Pharmaceuticals has expressly declined to waive the conflict, *see* Ryan Aff. Ex. G, we hereby disqualify the law firm of Dorsey & Whitney from representing Discotrade in the present matter.

**IT IS SO ORDERED.**